674 F.2d 1288
 Mitchell POMERANTZ, Maureen Soucy, Bert Hayner, On Behalf of
Themselves and All Other Persons Similarly Situated, and
National Federation of the Blind of California, a California
Corporation, Plaintiffs-Appellants,
v.
COUNTY OF LOS ANGELES; Peter F. Schabarum, Kenneth H. Hahn,
Edmund D. Edelman, James A. Hayes, and Baxter Ward,
individually and as Members of the Board of Supervisors of
the County of Los Angeles; Raymond Arce, Jury Commissioner
of the County of Los Angeles; William A. Goodwin, Former
Jury Commissioner for the County of Los Angeles; Judd
Holzendorff, Assistant Jury Commissioner for Superior Court
for the County of Los Angeles; Benjamin Vargas, Jury
Qualification Supervisor for the County of Los Angeles,
Defendants-Appellees.
 No. 80-5203.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 5, 1981.
Decided April 19, 1982.
 
 Stanley Fleishman, Beverly Hills, Cal., argued, for plaintiffs-appellants; A. Thomas Hunt, Los Angeles, Cal., on brief.
 John H. Larson, County Counsel, Gordon W. Trask, Deputy County Counsel, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, NELSON, and REINHARDT, Circuit Judges.
 NELSON, Circuit Judge.
 
 
 1
 On August 16, 1977, appellants, three blind individuals and the National Federation of The Blind of California, filed suit in the District Court for the Central District of California, seeking declaratory relief, an injunction, damages, and attorney's fees. The undisputed facts show that the Los Angeles County Jury Commissioner, and other employees directly involved in the jury selection process for the Superior Court for the County of Los Angeles had, prior to January 1, 1978, excluded all blind persons from jury service solely because they were blind. Appellants allege, however, that this exclusion was in violation of the due process and equal protection clauses of the fourteenth amendment.
 
 
 2
 Prior to the commencement of this suit, on January 17, 1977, S. B. 152 was introduced in the California State Senate. The bill specifically made the blind eligible for jury service after January 1, 1978. The bill was passed by the State Senate on June 6, 1977. On August 8, 1977, the State Assembly Committee on Judiciary recommended the bill be passed. On September 6, 1977, about three weeks after this suit was filed, the Senate Bill was approved by the Governor. The following day, the bill was chaptered by the Secretary of State. Cal.Civ.Proc.Code §§ 198, 199 (Deering 1981). On September 15, 1977, the Jury Commissioner ceased disqualifying the blind from jury lists to be used subsequent to January 1, 1978.
 
 
 3
 Before the new law amending Sections 198 and 199 of the California Code of Civil Procedure was passed, those sections said that in order to be competent to serve, a trial juror had to be "in possession of his natural faculties and of ordinary intelligence and not decrepit." Cal.Civ.Proc.Code §§ 198, 199 (Deering 1972) (amended 1977). Although the state courts had never interpreted the statute to decide whether the blind were meant to be disqualified under it, those in charge of jury selection had uniformly interpreted the law to exclude the blind from jury service.
 
 
 4
 After the change in law, jury questionnaires sent in 1977, for service in 1978, were reviewed. Respondents who had indicated they were blind were no longer disqualified. The fact of blindness, therefore, has not barred anyone from serving on a jury since January 1, 1978. There is no question that all appellees have always acted in good faith in these matters and with no animus towards the blind. They have always acted under the reasonable belief that they are carrying out the law and policy of the state and the Superior Court.
 
 
 5
 In their second amended complaint, filed February 18, 1978, appellants claimed damages under 42 U.S.C. § 1983 (1976) and 29 U.S.C. § 794 (Supp. II 1978). They dropped their demand that the blind no longer be excluded systematically from jury service, that demand having been met by the new legislation. They also dropped their claim for declaratory relief, but still made numerous demands on appellees for which they sought an injunction. Specifically, they demanded that the court order that the named appellants be placed immediately on a jury list, that the jury questionnaires be changed to make it clear that the blind are no longer excluded, that appellees refrain from making jury service for the blind contingent on a waiver of claims, that appellees not discourage the blind from serving and inform the public of a blind person's right to serve, and that appellees make all juror reading material available in braille.
 
 
 6
 On December 13, 1979, the district court entered summary judgment on behalf of appellees on all issues and denied all relief to appellants. In a separate order dated February 5, 1980, the trial court denied appellants any award of attorney's fees. Appellees, however, have taken many of the actions demanded of them in appellants' second amended complaint. And although appellees have not arranged for immediate placement of appellants on a jury list, a blind person now has the same chance of serving as anyone else. This is demonstrated by the fact that one named appellant, Ms. Soucy, had already served on a jury as of January 28, 1980.
 
 
 7
 The trial court based its denial of equitable relief on two grounds: first, that the claims for injunctive and declaratory relief were moot except for the one demanding immediate placement on a jury list; and second that this last request "would jeopardize the rights of litigants to a randomly selected jury." In addition, on the issue of damages, the trial court found that the defendants, County of Los Angeles and Board of Supervisors, were not involved in the exclusion of blind jurors, and that all the other defendants acted in good faith and in the execution of a statute and are immune from damages under § 1983 and § 794.
 
 
 8
 We affirm the trial court's denial of damages, for reasons different, however, from those given below. We also affirm its holding on mootness. The district court's denial of an injunction for immediate placement on a jury list, however, is reversed and remanded for further consideration.
 
 I. DAMAGES
 
 9
 The standard of review of a summary judgment is set forth in Gaines v. Haughton, 645 F.2d 761, 769 (9th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982):
 
 
 10
 The test to be applied in reviewing the grant or denial of a summary judgment motion is that summary judgment is proper only when there is no genuine issue of any material fact or when viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law.
 
 
 11
 Under that standard, we cannot disturb the trial court's finding that neither the County nor the Board of Supervisors had any participation in the jury selection process. There is no genuine issue of fact as to that finding, even viewing the evidence in the light most favorable to appellants. No damages, therefore, can be awarded against these two appellees. Any damage recovery against the other appellees, those who were involved in the jury selection process, is barred by their quasi-judicial immunity. Burkes v. Callion, 433 F.2d 318, 319 (9th Cir. 1970), cert. denied, 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971). The Burkes court concluded: "This circuit has repeatedly held that judges and other officers of government whose duties are related to the judicial process are immune from liability for damages under § 1983 for conduct in the performance of their official duties." 433 F.2d at 319. The court then held that a court appointed psychiatrist was entitled to this quasi-judicial immunity.
 
 
 12
 There are other instances, in addition to Burkes, of officials less involved with the judicial process than jury administrators having been held entitled to this quasi-judicial immunity. For example, in Mills v. Small, 446 F.2d 249 (9th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 535, 30 L.Ed.2d 543 (1971), a Superior Court medical examiner was held entitled to the immunity. And while none of the cases[1] on this subject deals with actions under § 794, they all deal with civil rights type actions, mostly under § 1983. We see no reason to distinguish actions under § 794 from other civil rights actions for immunity purposes. See New York State Association For Retarded Children v. Carey, 612 F.2d 644, 649 (2d Cir. 1979). We hold, therefore, that the remaining individual defendants are entitled to quasi-judicial immunity from damages, both as to the § 1983 and the § 794 causes of action. For this reason, we affirm the trial court's denial of damages.
 
 II. MOOTNESS
 
 13
 We also affirm the lower court's holding that all requests for injunctive relief are moot except for the one asking that appellants be placed immediately on a jury list. According to Franks v. Bowman Transport Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), "(t)he only constitutional mootness question is whether 'a live controversy (remains) at the time this court reviews the case.' " Id. at 755, 96 S.Ct. at 1260, 47 L.Ed.2d at 456 (quoting Sosna v. Iowa, 419 U.S. 393, 402, 95 S.Ct. 553, 559, 42 L.Ed.2d 532, 542 (1975)). This being the standard, the trial court's holding on mootness is, with the one exception mentioned, correct.
 
 
 14
 Our affirmance of the district court's holding that these injunctive claims are moot is buttressed by the district court's finding that "(t)he defendants have demonstrated complete willingness to apply the change in California law." In situations where defendants voluntarily comply with a plaintiff's request, a claim will generally be considered moot if there is no legitimate concern that the defendant will return to his old ways, and if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642, 649 (1979). The burden of demonstrating mootness is a heavy one, id. at 631, 99 S.Ct. at 1383, 59 L.Ed.2d at 649, but here, as in Davis, the burden is met.
 
 
 15
 The record clearly shows the good faith in which appellees have always acted and continue to act in enforcing the new statute and policy. There can be no legitimate concern that appellees will reinstitute the policy of excluding the blind from juries. Further, the jury questionnaires have been changed, the blind are encouraged to serve, and all other effects of the past exclusion for which appellants request injunctive relief, with the exception of one, have been eradicated and are moot. The only viable claim for injunctive relief, therefore, is the request that all those previously excluded from service due to blindness be placed immediately on a jury list.
 
 III. IMMEDIATE PLACEMENT ON A JURY LIST
 
 16
 Although it did not reach the question of whether the exclusion of blind persons from jury duty violated appellants' rights under the United States Constitution, the trial court denied the request for injunctive relief which would immediately place appellants on a jury list. The court held only that the remedy requested was unavailable because it would interfere with the rights of California litigants to a randomly selected jury. We now reverse that denial by adopting the Fifth Circuit rule that it is improper for a court to find first that there is no available equitable relief and then to refuse to consider the substance of a party's constitutional claim. The trial court must first decide whether or not there is a constitutional right, and only then consider the question of the appropriate equitable remedy, if any. Ciudadanos Unidos de San Juan v. Hidalgo County, 622 F.2d 807, 826-29 (5th Cir. 1980), cert. denied, 450 U.S. 964, 101 S.Ct. 1479, 67 L.Ed.2d 613 (1981). We express no view on whether the injunction requested would interfere with any policy or mandate of randomness in jury selection, whether, if it does, that policy or mandate must bow to constitutional concerns, or whether some other equitable relief short of that requested by appellants would be appropriate. Rather, because the trial court acted improperly in not deciding the constitutional issue, we must reverse its denial of relief and remand the decision of that issue.
 
 
 17
 Our holding here only applies to situations where the court attempts to fashion or denies equitable relief before the substantive right has been considered. In other words, unless equitable relief is absolutely barred, a court must consider the merits of a constitutional claim before deciding which equitable remedy is appropriate, if any, and then fashioning that relief.
 
 
 18
 On the other hand, if some remedy is barred absolutely, the court need not consider the substantive claim before denying that relief. Here, we have affirmed the denial of damages without considering the substantive right because damages are absolutely barred by appellees' quasi-judicial immunity. And since a finding of mootness bars a court from considering the claim, our affirmance of the dismissal on mootness grounds of certain requests for injunctive relief is consistent with the rule we adopt. Mootness is not merely a matter of fashioning equitable relief, it is a bar to any relief and so may be considered before the right. Moot cases are beyond the federal judicial power under the Article III "Cases and Controversies" limitation. California v. San Pablo & T. R. Co., 149 U.S. 308, 313-14, 13 S.Ct. 876, 878, 37 L.Ed. 747, 748-49 (1893); C. Wright, Law of Federal Courts, § 12 at 39 & n.7 (3d ed. 1976).
 
 
 19
 Since the trial court's randomness concerns, however, were only a policy consideration in attempting to fashion equitable relief, and not an absolute bar to relief, our rule prevents bypassing a consideration of the allegedly violated constitutional right insofar as the request for immediate placement on a jury is concerned.
 
 IV. ATTORNEY'S FEES
 
 20
 On remand, the trial court must also reconsider its disposition of appellants' request for attorney's fees. Appellants claim attorney's fees under 29 U.S.C. § 794a (Supp. II 1978) and 42 U.S.C.A. § 1988 (1981). Under both statutes, plaintiff may only be awarded fees if he is a "prevailing party." To interpret § 794a, we must look to cases under § 1988, since there is a dearth of authority on the former statute. United Handicapped Federation v. Andre, 622 F.2d 342 (8th Cir. 1980). It is cases under § 1988, therefore, interpreting the meaning of "prevailing parties," which define the term for both statutes.
 
 
 21
 The lower court denied attorney's fees, saying that appellants were not "prevailing parties." The court found that "(t)he elimination of the blind disqualification was passed entirely independently of the legislation." The court also found that all of appellees' actions, in regard to the new legislation, the jury questionnaires, the waiver of claims and other changes designed to facilitate the inclusion of the blind on juries were independent of appellants' lawsuit. The lower court stated that the lawsuit "did absolutely nothing to change the attitude of the County of Los Angeles, or the State of California with reference to the blind."
 
 
 22
 Although the trial court was correct in denying attorney's fees, we hold that its decision must be reconsidered now in order to determine if appellants are "prevailing parties" after the remanded issue has been decided.[2]
 
 V. SUMMARY
 
 23
 In summary, we affirm the denial of damages as well as the denial of all injunctive relief except for the request that the individual appellants immediately be placed on a jury list. The denial of this last request for relief is reversed and the issue is remanded for reconsideration of the merits of appellants' constitutional claim before the trial court approaches the question of possible relief. Although the trial court correctly denied attorney's fees given its disposition of the other issues, the attorney's fees issue must also be reconsidered on remand after the injunction claim has been considered in order to see if appellants are "prevailing parties" within the meaning of 29 U.S.C. § 794a and 42 U.S.C. § 1988.
 
 
 24
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 
 
 
 [1]
 Other cases allowing quasi-judicial immunity for official duties which are not strictly judicial include: Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 994-95, 47 L.Ed.2d 128, 143 (1976) (prosecutor in initiating a prosecution and presenting the government's case); Johnson v. Reagan, 524 F.2d 1123, 1124 (9th Cir. 1975) (legislators); Bershad v. Wood, 290 F.2d 714, 716 (9th Cir. 1961) (Internal Revenue Service agents in levying on plaintiff's bank deposit); Dieu v. Norton, 411 F.2d 761, 763 (7th Cir. 1969) (court clerk and court reporter); Pope v. Chew, 521 F.2d 400, 405 (4th Cir. 1975) (parole board members submitting parole and pardon recommendations)
 
 
 [2]
 The trial court, in reconsidering the attorney's fees issue, may wish to note the following: The court in American Constitutional Party v. Munro, 650 F.2d 184 (9th Cir. 1981), held that in order for there to be a "prevailing party," there must be a causal relationship between the litigation brought and the practical outcome realized. The former must be a material factor in bringing about the latter. Id. at 187. In addition, although the plaintiff need not win formal relief, the suit must cause a significant or important change in order for the plaintiff to be a "prevailing party." S.Rep.No.1011, 94th Cong., 2d Sess. 5, reprinted in 1976 U.S.Code Cong. & Ad.News 5912 (fees especially appropriate where party prevails on an important matter in the litigation); Manhart v. City of Los Angeles Department of Water & Power, 652 F.2d 904, 906-07 (9th Cir. 1981) (plaintiff must prevail on a significant issue)