**GREATER LOS ANGELES COUNCIL OF DEAFNESS, INC., Barbara U. Sheridan, and Joy Anne Maucere, individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**Frank S. ZOLIN, individually, and as Jury Commissioner for the County of Los Angeles; Raymond F. Arce, individually, and as Director of Juror Services for the County of Los Angeles; County of Los Angeles; Superior Court of the State of California For the County of Los Angeles, Defendants.**

No. CV 81–6338–ER.

United States District Court,
C.D. California.

July 2, 1984.

David Grosz, Kristine Kravetz, Stanley Fleishman, Los Angeles, Cal., for plaintiffs.

Lester J. Tolnia, Deputy County Counsel, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

RAFEEDIE, District Judge.

### BACKGROUND

This suit was brought by individual plaintiffs Barbara Sheridan and Joy Anne Maucere, and by the Greater Los Angeles Council on Deafness, Inc. ("GLAD") against the County of Los Angeles ("County"); the Superior Court of the State of California for the County of Los Angeles ("Superior Court"); Frank Zolin, Jury Commissioner for the County; and Raymond Arce, Director of Juror Services for the County.

Sheridan and Maucere are both deaf. Plaintiffs allege that the defendants' refusal to pay for, or provide, sign language interpreters for deaf or hearing impaired individuals so that such individuals may serve on juries violates § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982); § 122(a) of the Revenue Sharing Act, 31 U.S.C. § 6716 (1982), and accompanying regulations (31 C.F.R. Part 51);

§ 1983 of Title 42; and California Government Code § 11135.[1] Plaintiffs seek a mandatory injunction requiring defendants to pay for or otherwise provide interpreters for deaf individuals called to jury service in the Superior Court. Plaintiffs also seek monetary damages.[2]

In 1981, both Sheridan and Maucere received trial jury summonses ordering them to appear at the San Antonio Municipal Court and the Van Nuys branches of the Superior Court, respectively. Each wrote a letter to the individual defendants, advising them that she was deaf and asking whether sign language interpreters would be provided. The plaintiffs informed the individual defendants that unless interpreters were provided or paid for by the Superior Court or County, they would be unable to serve as jurors due to the expense. The defendants advised the plaintiffs that interpreters would not be provided.

On August 14, 1981, Nathan Shapiro, a hearing impaired individual, received a jury summons to appear at the Van Nuys Courthouse mentioned above. Shapiro appeared for jury duty with a sign language interpreter provided by GLAD and was selected as an alternate juror. A GLAD representative spoke to a Superior Court employee about paying for the interpreter and was told that there was no provision for such payment. Shapiro attended court as a juror for 22 days with an interpreter provided by GLAD. At the end of the trial, GLAD submitted a bill of $2,022.63 to the Superior Court. Defendant Arce wrote a letter to GLAD informing GLAD that the bill would not be paid. At least 16 deaf or hearing impaired individuals have responded to jury summons to the Superior Court between April 1981 and January 1982, but only two have served. The rest refused to, without the provision of or payment for interpreters.

In fiscal year 1980–81, the County Clerk received $108,912 from the Law Enforce-

---

1. Plaintiffs have also contended that the failure to provide sign language interpreters for deaf or hearing impaired persons called as jurors violated their constitutional rights. Plaintiffs do not press this argument now. *See* Plaintiffs' Post Trial Memorandum Filed Pursuant to Court Order, 16 n. *.

2. The parties have stipulated to the amount of damages.

ment Assistance Administration ("LEAA"), a United States government agency, for a microfilm project. In the same year, the Superior Court also received $211,880 from LEAA for the Jury Service Improvement Program[3] and $210,000 from the United States Department of Health, Education & Welfare ("HEW") for the Guardian Ad Litem Program. In fiscal year 1981–82, the Guardian Ad Litem Program received an additional $218,052 from HEW.[4]

In fiscal years 1980–81, Los Angeles County received $76,438,294 from the Department of Justice, Office of Revenue Sharing. In fiscal year 1981–82, Los Angeles County received $82,979,616 in revenue sharing funds. According to testimony, revenue sharing funds are used currently for capital improvements and no federal money was funneled through the County to the Superior Court in either 1980–81, 1981–82, or 1982–83. For at least one year between 1972 and 1979, however, between $65,000,000 and $120,000,000 of revenue sharing funds were used to meet the County's contribution to the retirement fund, which includes Superior Court personnel.

Los Angeles County supplied $47,000,000 of the Superior Court's 1982 budget of $52,000,000. Additionally, while the employees of the Superior Court, including defendants Zolin and Arce, are state employees, the County pays their salaries and includes them in the County medical and retirement funds. This Court takes judicial notice of the fact that the Superior Court is dependent upon the County for financing, housing, and a wide variety of support systems.

## ANALYSIS

The thrust of plaintiffs' case is that the defendants violated plaintiffs' statutory rights by refusing to provide or pay for sign-language interpreters for deaf or hearing impaired individuals who are called for jury duty. Plaintiffs' case rests largely upon a 1981 amendment to California law which removed the presumption that individuals who are deaf or hearing-impaired are incompetent to sit on juries. *See* Cal. Code Civ.Proc. § 198 (as amended January 1, 1981) ("§ 198").

■ The plaintiffs are not, however, arguing that § 198 mandates California State Courts to provide sign language interpreters to deaf and hearing impaired individuals. Rather, they argue the state law proves that such individuals are qualified to be jurors. Plaintiffs rely upon federal and state civil rights and anti-discrimination statutes to prove that defendants must provide interpreters for deaf persons called to jury service.[5]

### Immunity

■ Before examining whether defendants have violated any of these stat-

3. The Superior Court received a like amount in 1979–80 for this program. By the time of trial, all these funds had been expended and the grants had not been renewed.

4. Other County programs, which aid the Superior Court, received federal grants. The Sheriff's Department received $1,457,975.00 in federal money for specific projects, and $295,345.00 in 1981–82. The Sheriff's Civil Division provides services for the Superior Court, including bailiffs. The federal government also granted money to the Probation Department and the District Attorney.

5. Plaintiffs' reliance upon § 198 and the recent decision in *Pennhurst State School v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), force this Court to decide whether the eleventh amendment bars the Court from acting. In *Pennhurst,* the Supreme Court held that the "federal courts lacked jurisdiction to enjoin [ ] state institutions and state officials on the basis of state law." *Id.* at 921. This decision was based on the principle of federalism as embodied in the eleventh amendment. The eleventh amendment, however, does not apply to "counties and similar municipal corporations," *Mt. Healthy City Board of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977), *see Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1890), such as defendants in this case. While the eleventh amendment bars relief if that relief runs against the state, the defendants have presented no evidence to show that would be the case here. Unlike the county defendant in *Pennhurst, see* 104 S.Ct. at 921, the Superior Court receives most of its funding from the County, rather than the state. Therefore, the eleventh amendment does not apply to this case, and there is no reason to reach one of the many questions created by the *Pennhurst* decision: what effect, if any, does the eleventh amendment have when a federal court enforces a

utes, this Court must examine which, if any, of these defendants are protected by immunity from the award of monetary damages.[6] In *Pomerantz v. County of Los Angeles,* 674 F.2d 1288 (9th Cir.1982), the Ninth Circuit held that the Los Angeles County Jury Commissioner and other employees directly involved with the jury selection process for the superior court who excluded all blind persons from jury service solely because they were blind were protected by their quasi-judicial immunity. *Id.* at 1291. In *Pomerantz,* the Court said that "this circuit has repeatedly held that judges and other officers of government whose duties are related to the judicial process are immune from liability for damages under § 1983 for conduct in the performance of their official duties." *Id.* (quoting *Burkes v. Callion,* 433 F.2d 318, 319 (9th Cir.1970)). The Ninth Circuit concluded that "the remaining individual defendants are entitled to quasi-judicial immunity from damages, both as to the § 1983 and the § 794 action."

Under *Pomerantz'* rationale, defendants, Zolin and Arce, who took the actions complained of in this suit in their official capacity, are protected from money damages by their quasi-judicial immunity. *Pomerantz* would also bar monetary relief against the Superior Court. For if the officials who serve the Superior Court are protected by quasi-judicial immunity, the court itself would be protected by judicial immunity.[7] *See, generally, Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Overseeing the selection of the jury is a judicial responsibility.[8]

The decision whether to pay for interpreters for prospective jurors was made by the Superior Court and its officials. It is true that Superior Court Judge Schwartz relied upon advice that the County Counsel had supplied to the Superior Court's Jury Commissioner's Office "that there is no authority for the court to appoint said interpreters at public expense or to order reimbursement of their costs from public funds" in declining to appoint a sign language interpreter for Shapiro. Stipulation of Judge S.S. Schwartz. But it was the Superior Court judge who made the final decision. The County Counsel's opinion and the County's paying the salary of Zolin and Arce are not sufficient to show that the County itself participated in the jury selection process, such that it would be liable under either § 504 or § 1983. The district court in *Pomerantz* came to the same conclusion, which the Ninth Circuit affirmed. 674 F.2d at 1291. Thus the County, on the showing before the Court, cannot be held liable.

*Rehabilitation Act of 1973*

Section 504 of the Rehabilitation Act of 1973 states in pertinent part:

No otherwise qualified handicapped person in the United States ..., shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794.

■ While all the defendants are immune from money damages, *see supra* at

---

federal law against a state entity or official, but, in so doing, relies upon a state statute in the interpretation or application of the federal right?

**6.** The Court took the immunity question raised in defendants' Motion to Dismiss under submission at the opening of the trial in order to hear all the evidence which might be introduced against the defendants.

**7.** The Superior Court was not a defendant in *Pomerantz.*

**8.** If, however, the actions by the Superior Court to which plaintiffs object were characterized as

not judicial in a strict sense, these actions would be legislative. The promulgation of policy regarding jury selection could arguably be considered legislative in character, albeit closely related to the task of conducting trials. Under this alternative view, *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 731–34, 100 S.Ct. 1967, 1974–76, 64 L.Ed.2d 641 (1980) (state supreme court immune when acting as legislature in promulgating attorney conduct rules), would grant absolute immunity to the Superior Court's actions at issue in this case. Again, this defendant could not be found liable.

p. 179, the individual defendants and the Superior Court could still be subject to a mandatory injunction if the present practice of not providing or paying for sign language interpreters were found to violate the Rehabilitation Act. To prove a violation of the Rehabilitation Act, the plaintiffs must show that deaf and hearing impaired individuals are "handicapped person[s]" under the act, *see* 29 U.S.C. § 706(7) (1982); that they are "otherwise qualified" as juror, *see* 29 U.S.C. § 794 (1982); that the jury program or Superior Court is a federally funded program; and that the policy of not paying for or providing sign language interpreters is discriminatory or excludes such persons from being a juror. *See Bentivegna v. United States Department of Labor*, 694 F.2d 619, 621 (9th Cir.1982) (outlining elements to be proved).

There is no dispute that the individual plaintiffs would be considered to be handicapped persons under the Rehabilitation Act. Similarly, defendants do not dispute that Cal.Civ.Pro.Code § 198 renders the plaintiffs qualified as jurors. But before this Court may determine whether the practice complained about violates § 504, this Court must first determine that there is a federally funded program. In this respect, this case differs from *Peck v. County of Alameda*, No. C 80–3629, slip op. at 2 (N.D.Cal. Dec. 18, 1981), in which the plaintiff raised a similar claim. In *Peck*, it was undisputed that the municipal court received federal funding.

■ Additionally, defendants argue in their post-trial brief that § 504 is not applicable in this case because § 504 is intended to eliminate discriminatory barriers that handicapped individuals face in education and employment, but that it is not intended to be a general civil rights bill for the handicapped.

Further, the defendants claim that the plaintiffs must show that the federal money received is for the principal purpose of providing employment. Both of these propositions are wrong.

Congress made explicit in its 1974 amendments to the Rehabilitation Act that that Act forbids all forms of discrimination in federally funded programs. The Senate Labor Committee Report explained that the definition of a handicapped individual was amended to clarify that "Section 504 was enacted to prevent discrimination against all handicapped individuals, regardless of their need for, or ability to benefit from, vocational rehabilitation services, in relation to federal assistance in employment, housing, transportation, education, health services, or any other Federally-aided programs." S.Rep. No. 1297, 93d Cong. 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 6373, 6388. As for defendants' argument that the federal funding must be for employment, the Supreme Court, in *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), held that § 504 contained no such requirement, reversing the Ninth Circuit's decision in *Scanlon v. Atascadero State Hospital*, 677 F.2d 1271 (9th Cir.1982).

Plaintiffs still, however, must show federal funding for "Section 504, by its terms, prohibits discrimination only by a program or activity receiving Federal financial assistance." *Consolidated Rail*, 104 S.Ct. at 1255. While plaintiffs admittedly have shown federal financing of the Superior Court for fiscal years 1980–81 and 1981–82, they have not shown any federal funding of either the Superior Court in general or the jury system in particular after this date, or even the likelihood of such funding. The Jury Service Improvement Program grant expired in 1981, and no other direct federal funding of the jury system has been identified. Assuming *arguendo* that the proper unit of federal funding to look at is the Superior Court rather than the jury system,[9] the only other direct fed-

---

9. Because of the resolution of this issue, this Court does not reach the question of what the relevant "program" is in this case. *See Consolidated Rail*, 104 S.Ct. at 1256 (leaving open the question, but requiring program specificity); *Meyerson v. State of Arizona*, 709 F.2d 1235, 1237–38 n. 1 (9th Cir.1983) (not reaching the issue of the nexus required between the pro-

eral funding of the Court, the Guardian Ad Litem grant, expired in 1982.

■■■ Indirect funding by the federal government would also be sufficient to meet this requirement under § 504, *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), but the defendants testified that the Superior Court did not receive any Revenue Sharing Funds through the County in 1980 or 1981 and that there was no plan for it to do so in the future, as these funds were to be used for capital expenditures. Thus, plaintiffs have only shown *past funding.* Plaintiffs, have not, however, cited to this Court any discussion of § 504 in the legislative history nor any case support for the proposition that an injunction may be imposed upon defendants to pay for or provide for interpreters based upon § 504 when no showing has been made that the program is presently, or is likely to be in the future, subject to the section's antidiscrimination prohibition. Nor did plaintiffs cite any support that an injunction can be based upon past program funding.[10] Consequently, § 504 cannot provide a basis, in this instance, for injunctive relief. Thus, this Court's decision does not reach the question of whether the Rehabilitation Act would require interpreters be provided for deaf or hearing impaired

individuals called for jury duty in the Superior Court.

*Revenue Sharing Act*

■■■ Section 6716(b)(2) of the Revenue Sharing Act prohibits discrimination against otherwise handicapped individuals by units of general local or state government when the government receives a payment from Revenue Sharing.[11] Before bringing a suit under the Revenue Sharing Act, however, plaintiffs must first exhaust their administrative remedies. *See* 31 U.S.C. § 6721(b) (1982).[12] "Section 1244(d) [now § 6721(b)] and 31 C.F.R. § 51.64 (1980) provide that an action may not be brought if the complainant has not filed an administrative complaint with the Director of the Office of Revenue Sharing, 31 C.F.R. § 51.61 (1980), or with an agency with which the Director has an agreement under 31 C.F.R. § 51.74 (1980)." *Meyerson v. State of Arizona,* 507 F.Supp. 859, 863 (D.Ariz.1981), *aff'd,* 709 F.2d 1235 (9th Cir. 1983). Plaintiffs' failure to seek administrative relief bars any relief under § 6716.

*Section 1983*

■■■ Section 1983 provides a private cause of action for violation, under color of state law, of some federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65

gram receiving federal money and the plaintiff's injury in being excluded from a benefit). Plaintiffs, in their memorandum of fact and law, contend that the relevant program or activity is the Superior Court, although they occasionally refer to the jury system as the program.

10. The past funding, of course, would have allowed this Court to have awarded monetary damages if it had found a violation of § 504 and if the defendants had not been immune from monetary damages.

11. The relevant portion of this section states:
    § 6717. Prohibited discrimination
    (a) No person in the United States shall be excluded from participating in, be denied the benefits of, or be subject to discrimination under, a program or activity of a State government or unit of general local government because of race, color, national origin, or sex when the government receives a payment under this chapter.
    (b) The following prohibitions and exemptions also apply to a program or activity of a State government or unit of general local

government when the government receives a payment under this chapter:
    . . .
    (2) a prohibition against discrimination against an otherwise qualified handicapped individual under section 504 of the Rehabilitation act of 1973 (29 U.S.C. 794).

12. Section 6721(b) states:
    (b) A person adversely affected must file an administrative complaint with the Secretary of the Treasury or the head of another agency of the United States Government or the State agency with which the Secretary has an agreement under section 6716(d) of this title. Administrative remedies are deemed to be exhausted after the 90th day after the complaint was filed if the Secretary, the head of the Government agency, or the State agency—
    (1) issues a decision that the government has not failed to comply with this chapter; or
    (2) does not issue a decision on the complaint.

L.Ed.2d 555 (1980). The *Thiboutot* doctrine does not apply, however, where Congress has foreclosed a § 1983 remedy through sufficiently comprehensive remedial devices in the underlying act, and where the statute at issue does not create "rights, privileges, or immunities" within the meaning of § 1983. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981); *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 27–30, 101 S.Ct. 1531, 1544–47, 67 L.Ed.2d 694 (1981). In this case, however, the Court need not decide if § 1983 provides a remedy for either § 504 or the Revenue Act because there is no demonstrated violation of either § 504 or the Revenue Sharing Act and because all defendants are immune from money damages.

*California Statute*

■ California Government Code § 11135 [13] provides that no handicapped in-

dividual shall be denied benefits of a program which receives state funding [14] because of his or her handicap. Without deciding if the defendants' actions or policy qualify as prohibited discrimination under § 11135, as defined by Cal.Admin.Code Tit. XXII, §§ 98250–9 63 (1980), this Court notes that plaintiffs are required to seek relief through the process designated in Cal.Gov't Code § 11136 (West 1980). [15] Plaintiffs did not do so in this case. Although no cases seem to have been brought under § 11135, the legislative reports on this act stated that the intent in passing this section was to relieve the individual from enforcing the statute, and to place the burden upon the state agency funding the program. [16]

Plaintiffs have not cited to any legislative history to the contrary, nor to any judicial or legislative reasoning supporting their implied position that § 11135 provide a private right of action. Plaintiffs only

13. Cal.Gov't Code § 11135 (West 1980) states:
§ 11135 Denial of benefits based on ethnic identification, religion, age, sex, color or disability; prohibition
No person in the State of California shall, on the basis of ethnic group identification, religion, age, sex, color, or physical or mental disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state.

14. The evidence shows that the Superior Court received $5,207,000 from the State of California or its agencies.

15. Section 11136 provides that:
Whenever a state agency that administers a program or activity that is funded directly by the state or receives any financial assistance from the state, has reasonable cause to believe that a contractor, grantee, or local agency has violated the provisions of Section 11135, or any regulation adopted to implement such section, the head of the state agency shall notify the contractor, grantee, or local agency of such violation and shall, after considering all relevant evidence, determine whether there is probable cause to believe that a violation of the provisions of Section 11135, or any regulation adopted to implement such section, has occurred. In the event that it is determined that there is probable cause to believe that the provisions of Section 11135, or any

regulation adopted to implement such section, have been violated, the head of the state agency shall cause to be instituted a hearing conducted pursuant to the provisions of Chapter 5 (commencing with Section 11500) of this part to determine whether a violation has occurred.

16. For example, the Senate Digest that explains the bill reads:
Under current law and executive orders, all state agencies and entities receiving state funds are prohibited from engaging in employment discrimination in providing services. However, if an individual feels he or she has been discriminated against, they (sic) must go to court as individuals alleging discrimination under the United States Civil Rights Act.
On the basis of applicable law and court decisions, each state agency under this measure would adopt such rules and regulations as it deemed necessary to define unlawful discrimination within the context of programs and activities operated by the agency. From that point on, the agency would become primarily responsible for nondiscriminority (sic) policies and this would lessen the need for individuals to seek a judicial remedy of their own. The major intent of this measure is to shift the burden of proving unlawful discrimination in a state funded program from the person being discriminated against to the state agency administering the program.

argument is that § 11135 is modeled after the federal § 504. In fact, it may be fairer to compare § 11135 to § 503 of the Rehabilitation Act, 29 U.S.C. § 793 (1982), which forbids discrimination against the handicapped by government contractors. There is no private right of action to enforce § 503—federal agencies must bring the suit.

### CONCLUSION

This Court finds that it is unable to give the plaintiffs the relief they seek. Defendants are protected by immunity from money damages, and plaintiffs have been unable to show the level of federal funding required for this Court to issue an injunction based upon § 504. The plaintiffs have not complied with the administrative requirement of the Revenue Sharing Act. The failure to meet the requirements of a violation under either of these two acts precludes this Court from finding the violation of a statutory right under § 1983. Finally, the plaintiffs have no private right of action under § 11135.

Let judgment enter accordingly.