**Markos STEPHANIDIS**

v.

**YALE UNIVERSITY.**

**Civ. No. N–83–64(AHN).**

United States District Court, D. Connecticut.

July 30, 1986.

parole will be released pursuant to 18 U.S.C. §§ 4161–4164 on a date determined by his accrued good time credits.

Lorraine W. Osborne, Goldman, Rosen & Willinger, P.C., Bridgeport, Conn., for plaintiff.

Patrick M. Noonan, Wiggin & Dana, New Haven, Conn., for defendant.

## RULING ON DISMISSAL AND JUDGMENT

NEVAS, District Judge.

Plaintiff Markos Stephanidis commenced this action *pro se* in February 1983 alleging that Yale University ("Yale") discriminated against him on the basis of his handicap and age in dismissing him as a student in the Graduate English Department in 1967 and in denying him readmission in 1975 and again in 1981. Plaintiff also claimed that Yale committed medical malpractice in failing to properly treat his alleged mental illness in 1966–1967.

Two claims have survived the granting of Yale's motion for partial summary judgment and motion to dismiss and to strike. This action has been reduced to whether Yale, in denying plaintiff's application for admission to the Graduate English Department in 1981, discriminated against plain-

tiff on the basis of his alleged handicap in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. Section 794 (count one), and his age in violation of the Age Discrimination Act of 1975 ("ADA"), 42 U.S.C. Section 6101 *et seq.* (count two).*

In accordance with the ruling granting Yale's motion to dismiss and to strike the amended complaint, an evidentiary hearing was held on July 24, 1986, to establish whether plaintiff could properly invoke the nondiscrimination provisions of the Rehabilitation Act and the ADA. *See* 29 U.S.C. Section 794; 42 U.S.C. Section 6102. Plaintiff was provided the opportunity to prove that the entity from which he claims he has been discriminatorily excluded—the English Department, was a recipient of federal financial assistance within the meaning of the two acts' program-specific requirement as interpreted by the Supreme Court in *Grove City College v. Bell,* 465 U.S. 555, 570–74, 104 S.Ct. 1211, 1219–21, 79 L.Ed.2d 516 (1984) (receipt of federal funds does not trigger institutional-wide coverage under Title IX), and later in *United States Department of Transportation v. Paralyzed Veterans of America,* — U.S. —, —, 106 S.Ct. 2705, 2711, 91 L.Ed.2d 494 (1986). *See also Chaplin v. Consolidated Edison Company of New York, Inc.,* 628 F.Supp. 143, 145 (S.D.N.Y.1986) (receipt of federal funds for training does not trigger company-wide application of Rehabilitation Act); *Zangrillo v. Fashion Institute of Technology,* 601 F.Supp. 1346, 1352 (S.D.N.Y.1985).

### Hearing

At the hearing, the only witness to testify was Mrs. Alice Oliver, Yale's Assistant Director for Federal Grants and Contracts.

Since 1980, Mrs. Oliver has been responsible for overseeing the processing and awarding of outside funds provided to all departments at Yale, except Yale's Medical School. The outside funds include grants from the United States government. Her uncontroverted testimony was that, based upon her review of Yale's grant records in preparation for the hearing, the English Department has not received any federal financial assistance.

Mrs. Oliver explained that several members of the English Department have, however, received federal funds to participate in Yale's Summer Program. *See* Defendant's Exhibit 12 (seven Summer Program federal grants). The Summer Program is a separate department of Yale, functioning during the summer months when Yale is in recess. The Summer Program is sponsored financially by the National Endowment for the Humanities to provide seminars for high school teachers and college professors on various subjects in the humanities. The seminars do not involve Yale graduate students. The federal grant money is used to pay the attendees as well as cover their travel, room and board expenses, to pay the participating Yale faculty members a six week salary, and to pay the cost associated with running the program. The Summer Program Office administers the federal grants.

Mrs. Oliver testified further that the Summer Program has no involvement with the English Department. Each are in different buildings and each uses different support staff. The English Department neither supervises nor administers the federal grants. The federal grants are not received by the English Department and do not affect its budget.

* A federal district court has held that the ADA does not create a private cause of action. *See Mittelstaedt v. Board of Trustees of University of Arkansas,* 487 F.Supp. 960, 965 (E.D.Ark.1980). If the holding of *Mittelstaedt* is correct, the lack of private right of action would provide an additional reason to dismiss plaintiff's second count alleging an ADA claim. However, the correctness of the *Mittelstaedt* holding is questionable. First, the Code of Federal Regulations references a complainant's option of filing a civil action in a United States district court. *See* 45 C.F.R. Section 90.50(a) (agency's regulations should provide that a complainant may file a complaint after administrative remedies are exhausted). Second, there is no apparent reason why Congress would preclude the private enforcement of the ADA when private actions are filed to enforce the Rehabilitation Act.

In addition, Yale's federal grant records reflect that none of the federal grants administered by the Summer Program were in effect in 1981. Plaintiff applied to and was rejected by the Graduate English Department in the first few months of 1981.

### Dismissal

After hearing Mrs. Oliver's testimony, the court found that absolutely no evidence was produced to warrant a finding that Yale's English Department was a recipient of federal financial assistance. Based upon that finding, plaintiff could not meet his threshold burden that the specific program which allegedly discriminated against him received federal financial assistance. Thus, the nondiscrimination provisions of the Rehabilitation Act and the ADA were held inapplicable.

Furthermore, as Yale argued, if the Yale Summer Program federal grants, which were used in small part to pay a few members of the English Department faculty for teaching summer seminars, trigger the application of the Rehabilitation Act and the ADA in this case, then the acts would be applicable only during the period in which federal financial assistance was being extended. *See Greater Los Angeles Council of Deafness v. Zolin,* 607 F.Supp. 175, 180–81 (D.Cal.1984); *Bachman v. American Society of Clinical Pathologists,* 577 F.Supp. 1257, 1260–61 (D.N.J. 1983) (compliance with Rehabilitation Act is for the period which federal financial assistance is extended). *See also* 45 C.F.R. Sections 84.5(b)(3) and 1151.41(b)(2). The facts adduced at the hearing show that none of the federal grants administered by the Summer Program Office were in effect in 1981, the year in which plaintiff alleged that he was discriminated against. Therefore, absent the receipt and use of federal financial assistance at the relevant time, this action must fail.

### Conclusion

The laudable purpose of the Rehabilitation Act and the ADA is to prohibit discrimination on the basis of handicap or age by any "program or activity receiving Federal financial assistance." *See* 29 U.S.C. 794 (prohibit discrimination of qualified handicapped persons on basis of handicap in federally funded programs); *Zolin,* 607 F.Supp. at 180 (purpose of Rehabilitation Act is to forbid all forms of discrimination in federally funded programs); 42 U.S.C. Section 6102 (purpose of ADA is to prohibit discrimination on basis of age in federally funded programs). Coverage under the nondiscrimination provisions is the "contractual cost" agreed to by a recipient in return for receiving and using federal financial assistance. *See Paralyzed Veterans of America,* — U.S. at ——, 106 S.Ct. at 2711. However, to trigger that coverage under acts containing program-specific funding language, the teaching of *Grove City* and its progeny requires that the program accused of discrimination must be a recipient of federal financial assistance at the time of the alleged discrimination.

Application of the law to this action, without considering the merits of plaintiff's claims, mandates its dismissal.

Accordingly, plaintiff's action is dismissed and the Clerk shall enter judgment for defendant Yale University.