Phyllis CHAPLIN, on behalf of herself and all others similarly situated; and Epilepsy Foundation of America, Plaintiffs,

v.

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.; Charles Luce, individually and in his capacity as Chairman of The Board of Trustees of Consolidated Edison Company of New York, Inc.; Arthur Hauspurg, individually and in his capacity as President of Consolidated Edison Company of New York, Inc.; Regina Frederickson, individually and in her capacity as Director of Personnel of Consolidated Edison Company of New York, Inc.; Thomas M. O'Sullivan, individually and in his capacity as Assistant Director of Personnel of Consolidated Edison Company of New York, Inc.; John Holbrook, individually and in his capacity as a Personnel Representative of Consolidated Edison Company of New York, Inc.; Herman Halpern, individually and in his capacity as Medical Director of Consolidated Edison Company of New York, Inc.; and Jane Doctor and John Doctor, individually and in their capacities as unknown and unnamed physicians of the Medical Department of Consolidated Edison Company of New York, Inc., Defendants.

No. 79 Civ. 730(MEL).

United States District Court, S.D. New York.

Feb. 13, 1986.

See also 537 F.Supp. 1224.

John E. Kirklin, Director of Litigation, Civil Appeals & Law Reform Unit, The Legal Aid Soc., New York City, Jeffrey G. Abrandt, Attorney-in-Charge (Jonathan Ben-Asher, of counsel), Office for the Aging, Brooklyn, N.Y., for plaintiffs.

Ernest J. Williams, New York City, for defendants; Barry S. Goldstein, Geraldine O'Donnell, of counsel.

LASKER, District Judge.

In this action based on Section 504 of the Rehabilitation Act of 1973 ("the Act"), 29 U.S.C. § 794, Phyllis Chaplin, on behalf of

herself and all others who, like her, suffer from epilepsy, and the Epilepsy Foundation of America, seek compensatory and injunctive relief from Consolidated Edison Company of New York and various employees (collectively referred to as "Con Ed"), based on Con Ed's refusal to hire Ms. Chaplin and other qualified job applicants. As originally filed, the complaint alleged a cause of action based on Section 503 of the Act, as well as a cause of action based on Section 504. However, in an opinion reported at 579 F.Supp. 1470 (S.D.N.Y.1984), this Court granted Con Ed's motion to dismiss the Section 503 claims, and with regard to the Section 504 claims, granted plaintiffs' motion to compel discovery on the subject of the nature of the federal assistance received by Con Ed and the way in which that assistance is used in Con Ed's operations.

After complying with plaintiffs' discovery requests, Con Ed moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Con Ed's motion is granted.

\* \* \* \* \* \*

Section 504 of the Act provides in pertinent part:

> No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

As the language of the statute makes clear, a prerequisite to the application of this provision is that the program or activity from which plaintiff complains it has been discriminatorily excluded be the recipient of federal financial assistance.

■ Ms. Chaplin applied for a customer field representative position with Con Ed in August of 1978 without being referred by any outside agency. At that time, Con Ed's Specialized Training Department was under contract with the federal government through CETA (Comprehensive Employment Training Act) and WIN (Work Incentive Program) to conduct training programs. These programs were under the administrative control of several local and state agencies. Con Ed would train candidates that were referred to it by those local agencies and then its Specialized Training Department would be reimbursed for the costs incurred in implementing the program. The parties are in basic agreement as to these facts. It is only their legal implications that are in dispute.

Plaintiffs argue that the CETA and WIN funds constitute a benefit not only to the program or activity at Con Ed that directly received them (the Specialized Training Department) but also to all units or programs which subsequently employed any of the people trained in the federally funded program. Plaintiffs contend that when Ms. Chaplin was turned down, because of her handicap, for a position as a customer field representative, the division or program that turned her down (Department of Division Operations) was the recipient of federal financial assistance in the form of the benefit of having employees who were trained at federal expense.

In the alternative, plaintiffs argue that the tax credits received by Con Ed for capital expenditures on tangible property constitute federal financial assistance to all programs and divisions within the organization, since all divisions purchase items subject to the credit.

Con Ed responds that only the training division receives federal assistance under the CETA and WIN programs, and since Ms. Chaplin did not apply to the training division through a local agency referral, but only applied through ordinary, off-the-street channels for employment and not training, the federal financial assistance Con Ed receives is insufficient to support a Section 504 claim. Con Ed further argues that the program-specific nature of Section 504 renders it inconceivable that an across-the-board investment tax credit is sufficient to trigger Section 504 coverage.

\* \* \* \* \* \*

In *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984),

the Supreme Court addressed, in the context of Title IX, protection against discrimination in education, the issue of what constitutes a "program or activity receiving federal financial assistance." In that case, several students in a private college received direct grants which they used to pay the college tuition. The Court held that such federal assistance was sufficient only to trigger Title IX coverage in the program receiving the funds—the college's financial aid department, but not sufficient to effect coverage of all of the college's activities. The Court stated:

> Most federal educational assistance has economic ripple effects throughout the aided institution, and it would be difficult, if not impossible, to determine which programs or activities derive such indirect benefits....
>
> ... [W]e have found no persuasive evidence suggesting that Congress intended that the Department's regulatory authority follow federally aided students from classroom to classroom, building to building, or activity to activity.

*Id.* at 572–73, 104 S.Ct. at 1221–22.

Plaintiffs argue that the federal funding of Con Ed's CETA and WIN trainees triggers application of Section 504 to the entire Con Ed operation. The contention is directly contrary to *Grove City*'s holding.

Plaintiffs claim that two cases decided since *Grove City* compel an outcome in their favor. In *United States v. Baylor University Medical Center*, 736 F.2d 1039 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985), it was held that medicare/medicaid payments to a hospital's in-patient and emergency services was sufficient federal financial assistance to entitle the Department of Health and Human Services to investigate a discrimination claim from a patient not a recipient of federal funds. The holding was based, however, on a specific provision in the legislative history of the medicare/medicaid legislation, *id.* at 1044–46, which has no bearing on the instant case. Moreover,

in *Baylor, supra,* the in-patient service received the federal aid and plaintiff was an in-patient, therefore clearly subject to that Act's coverage.

In *Paralyzed Veterans of America v. Civil Aeronautics Board,* 752 F.2d 694 (D.C.Cir.), *cert. granted sub nom. Department of Transportation v. Paralyzed Veterans of America,* —— U.S. ——, 106 S.Ct. 244, 88 L.Ed.2d 253 (1985), regulation of airlines was held to be authorized because airports and the air traffic control system in question receive direct federal financing. Again, as in *Baylor,* the holding was based on the specific provisions of the Act being construed: The Airport and Airway Development Act of 1970, 49 U.S.C. § 1714, as amended, *id.* at 712–13, so that the decision is inapplicable to the present case. Plaintiffs have made no showing that the CETA or WIN funds distributed to Con Ed's training department were intended by Congress to have effects as far-reaching on all of Con Ed's operations as do the medicare and aviation statutes specified for hospitals and airports.

We conclude that to hold that the federal funds used to subsidize training programs within Con Ed for those unemployable candidates referred by local community organizations is enough of a nexus to require all of Con Ed to be regulated would be contrary to the program specificity of Section 504.

■ Plaintiffs argue in the alternative that tax credits applied by Con Ed to capital investments constitute federal financial assistance to a program that discriminated against the handicapped. This argument also contradicts the program-specific nature of Section 504. The tax credits plaintiffs rely on to show federal financial assistance were taken on capital investments purchased by many, if not all, the divisions in Con Ed. *See Paralyzed Veterans of America,* 752 F.2d at 709, and in the context of Title IX application, *Stewart v. New York University,* 430 F.Supp. 1305 (S.D.N.Y.1976).

The Supreme Court's decision in *Bob Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), does not compel a contrary result. In that case, the Supreme Court held that in determining the tax status of institutions, *i.e.*, whether they qualify for tax exempt status as charities, their discriminatory policies must be considered, to ensure that the government is not excusing from payment of taxes an institution which, because of its policy of discrimination, is not serving a truly public and charitable purpose. Con Edison, however, is not seeking the tax benefits of a charitable institution, nor is it a lobbying organization seeking tax exempt status as a charitable organization, as was the case in *Regan v. Taxation with Representation*, 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983). The investment tax credit does not subject Con Ed to the in-depth regulation plaintiffs propose.

For the reasons stated, the defendants' motion for summary judgment is granted and the complaint is dismissed. In view of this disposition of the motion for summary judgment, the motion for class certification filed by plaintiffs is moot and is therefore denied.

It is so ordered.