**Edwin J. EIVINS, Plaintiff,**

v.

**ADVENTIST HEALTH SYSTEM/EASTERN & MIDDLE AMERICA, INC., Defendant.**

Civ. A. No. 84–2049–S.

United States District Court, D. Kansas.

Jan. 9, 1987.

Shamberg, Johnson, Bergman & Goldman, Chartered, John E. Shamberg, David R. Morris, Lynn R. Johnson, Ruth M. Benien, Shawnee Mission, Kan., for plaintiff.

John J. Fallon, Reid F. Holbrook, Fallon, Holbrook & Ellis, Kansas City, Kan., Marc E. Elkins, Byron J. Beck, Overland Park, Kan., David T. Holt, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's motion for directed verdict at the

end of plaintiff's evidence on the issue of whether plaintiff has established his prima facie case under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. This written Memorandum and Order follows the court's oral pronouncement of its decision on defendant's motion and is intended to more fully explain the court's findings of fact and conclusions of law.

In ruling on a motion for directed verdict, a trial court "must view the evidence and the inferences to be drawn therefrom in the light most favorable to the party against whom the motion is directed." *Peterson v. Hager,* 724 F.2d 851, 853 (10th Cir.1984). Viewing the evidence in this manner, a directed verdict is proper only when the evidence is so patently in favor of the moving party that a jury verdict in favor of the opposing party would be improper and would have to be set aside by the trial judge. *Id.*

The facts relevant to this motion are as follows. Plaintiff was employed by defendant from January 1, 1980 until August, 1983. Defendant's status in this case is that of a nonprofit corporation that provides various services to certain hospitals with which defendant maintains a close relationship. Specifically, defendant acts as a holding company for certain hospitals, and maintains lesser ties with other hospitals. Plaintiff worked in the defendant's data processing department.

Sometime before April, 1983, the defendant suffered a loss of business. As a consequence, the defendant incurred a reduction in force. Plaintiff's work unit was discontinued. Within this work unit, some employees were reassigned to other positions with defendant, while other employees found jobs with hospitals through the aid of defendant. At this time, plaintiff had a diagnosed brain tumor and had suffered some degree of reduced work capability. Plaintiff was the only employee in his work unit to be terminated from employment with defendant or one of its related hospitals.

Plaintiff subsequently filed suit against this defendant and others, asserting causes of action under the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, and Section 504 of the Rehabilitation Act of 1973 (handicap discrimination), 29 U.S.C. § 794. The trial of this lawsuit commenced on January 5, 1987. Adventist Health System Eastern & Middle America, Inc. is the only remaining defendant, and has moved for directed verdict at the close of plaintiff's evidence on the issue of handicap discrimination.

The elements that the plaintiff must prove under Section 504 are as follows: (1) that he is a handicapped individual as defined in the statute; (2) that he is otherwise qualified to participate in the program or activity at issue; (3) that he was excluded from the program or activity solely by reason of his handicap; and (4) that the program or activity receives federal financial assistance. *Henning v. Village of Mayfield Village,* 610 F.Supp. 17, 18 (N.D. Ohio 1985). The specific element that the defendant now challenges is the requirement that the program or activity receive federal financial assistance. Plaintiff has attempted to show that while the defendant does not directly receive federal financial assistance, it maintains a symbiotic relationship with certain hospitals that receive federal aid in the form of Medicare and Medicaid. Therefore, plaintiff asks this court to determine that defendant is in fact a recipient of federal financial assistance within the meaning of Section 504.

The court finds that in this particular case, there are two steps to be examined before it can be established that the plaintiff participated in a program or activity that received federal funds. First, because it is not the defendant itself that directly receives federal funds but some related entity, it must be established that the relationship between the defendant and that entity is of a sufficient quality to extend coverage of the Rehabilitation Act to the defendant. The evidence has shown, principally through the testimony of defendant's president, Mr. Shawver, that defendant operates as a holding company for several hospitals. For the purposes of this

motion, the court notes that the defendant categorizes these particular hospitals as being "owned" by defendant. The defendant also "leases" certain hospitals and "manages" other hospitals. The defendant provides numerous budgeted services for the hospitals that it owns. The overall budget for services provided generally to hospitals that defendant owns is based on the number of patient/days achieved by the hospital. These hospitals are the recipients of Medicare and Medicaid payments. Hospitals that receive Medicare and Medicaid payments are recognized as receiving federal financial assistance within the meaning of the Rehabilitation Act of 1973. *See United States v. Baylor University Medical Center,* 736 F.2d 1039, 1040–41 (5th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985). Therefore, these hospitals themselves are prohibited from discriminating against otherwise qualified persons based on handicap. At least one court has held that all those entities having a sufficient financial relationship to the hospital also fall within the coverage of Section 504. The standard used by the Fifth Circuit focuses on the financial arrangement between the hospital and the particular defendant. When Medicare and Medicaid are of mutual benefit to the two entities, both are held to be recipients of federal financial assistance. *See Frazier v. Board of Trustees of Northwest Miss.,* 765 F.2d 1278, 1288–91 (5th ·Cir. 1985).

This line of analysis is expressly refuted in a recent United States Supreme Court decision, *United States Department of Transportation v. Paralyzed Veterans of America,* —— U.S. ——, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986). In *Paralyzed Veterans,* the court found a distinction between *beneficiaries* and *recipients* of federal funds. The Court expressly rejected the proposition that federal financial assistance follows the aid past the recipient to those who merely benefit from the aid. The Court stated:

> [R]espondents assert that the economic benefit to airlines from the aid to airports is a form of federal financial assist-

ance. This position ignores the very distinction made by Congress in § 504 and recognized in *Grove City:* The statute covers those who receive the aid, but does not extend as far as those who benefit from it. In *Grove City* we recognized that most federal assistance has "economic ripple effects." We rejected the argument that those indirect economic benefits can trigger statutory coverage. [*Grove City College v. Bell,* 465 U.S. 555, 572 [104 S.Ct. 1211, 1221, 79 L.Ed.2d 516] (1984)]. Congress tied the regulatory authority to those programs or activities that *receive* federal financial assistance; the key is to identify the recipient of that assistance.

*Id.* at ——, 106 S.Ct. at 2712. Even if the coverage were extended to those that Congress intended to *directly benefit* through Medicare and Medicaid payments, nowhere has Congress expressed an intent to benefit entities such as the defendant. The plaintiff could not support a "direct" or "intended" beneficiary theory, however, because the Supreme Court stated that if coverage were extended beyond actual recipients, "[t]he statutory 'limitation' on § 504's coverage would virtually disappear, a result Congress surely did not intend." *Id.* at ——, 106 S.Ct. at 2713.

Moreover, even if plaintiff could establish a strong financial relationship between defendant and the hospitals it owns, the Supreme Court indicated that this would still be insufficient to hold defendant liable under the Act. The Court stated:

> The Court of Appeals' reasoning extends § 504 beyond its bounds. Under the Court of Appeals' view, various industries and institutions would become part of a federally-assisted program or activity, not because they had received federal financial assistance, but because they are "inextricably intertwined" with an institution that has [received federal funds].... This interpretation of § 504 would give it a scope broader than its language implies, and one never intended by Congress.

*Id.* at ——, 106 S.Ct. at 2714. Under this analysis, it is clear that Congress did not intend for coverage of the Act to extend to an entity in the position of defendant. Therefore, the court finds as a matter of law that the defendant is not a recipient of federal financial assistance, and defendant's motion for directed verdict on this issue should be granted.

Although the court believes that this is an adequate ground upon which to grant defendant's motion, an extremely conservative interpretation of the Supreme Court's decision could find that the financial/structural relationship between defendant and the hospitals is sufficient to establish that the defendant is a recipient of federal financial assistance. However, even such an interpretation would not end the inquiry.

 The simple fact that an entity receives federal financial assistance does not make the Rehabilitation Act applicable to every operation in which the entity is involved. The federal funds "must have some nexus to the program or activity in which the handicapped person is to participate." *Henning*, 610 F.Supp. at 19 (citing *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984)). The plaintiff worked in the data processing department for defendant. Mr. Shawver, president of defendant, unambiguously testified that data processing is not one of the services provided to the "owned" hospitals for which funding is controlled through the general budget. Rather, this service is provided only upon separate request by a particular hospital. Payment for the service is handled separate from the general budget. The charge for the data processing service is based only on the type and volume of data processing requested, and is not adjusted for the number of patient-days achieved by the requesting hospital. In this manner, the data processing department, which is the "program or activity" in which plaintiff participated, acts much like an independent contractor whose compensation from defendant is in no reasonable light related to the hospital's receipt of federal financial assistance.

Thus, while defendant may benefit in its budgeted services from the Medicare and Medicaid payments (or other federal financial assistance) received by the hospitals that it owns, an optional service provided at cost does not represent a program or activity that receives federal financial assistance. *See Chaplin v. Consolidated Edison Co. of New York, Inc.*, 628 F.Supp. 143, 144-45 (S.D.N.Y.1986). The court therefore finds that the federal funds that are received by the particular hospitals and that benefit the defendant in its general operations do not provide enough of a nexus to require all of defendant's operations to be regulated by Section 504. The court further finds that the data processing operation cannot be considered as a program or activity that receives federal financial assistance within the meaning of Section 504. Therefore, plaintiff has failed to produce sufficient evidence to overcome a motion for directed verdict on the issue of handicap discrimination, and defendant's motion must be granted.

Because the court has made the legal determination that plaintiff has failed to establish his prima facie case under the Rehabilitation Act of 1973, that claim must be dismissed from the lawsuit. The court notes that the time for appealing this order will not commence until final judgment is entered on all of plaintiff's claims.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for directed verdict at the close of plaintiff's evidence be granted as to plaintiff's cause of action under Section 504 of the Rehabilitation Act of 1973.