Arlene PFEIFER, a minor by her
parent and natural guardian
Delmont PFEIFER

v.

MARION CENTER AREA SCHOOL
DISTRICT, et al.

Civ. A. No. 84–648.

United States District Court,
W.D. Pennsylvania.

Nov. 14, 1988.

Chere' Winnek–Shawer, Jay Y. Rubin, Indiana, Pa., for plaintiff.

Martha Hartle Munsch, Walter G. Bleil, Reed Smith Shaw & McClay, Pittsburgh, Pa., defendants.

Ivan B. Gluckman, Nat. Ass'n of Secondary School Principals, Reston, Va., for Nat. Ass'n of Secondary Schools.

## OPINION

GERALD J. WEBER, District Judge.

Both sides seek reconsideration of our previous Opinion and Order. Because of further developments in the law of Title IX following *Grove City v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984) we must vacate our prior Opinion and Order. As explained below we conclude that plaintiff's Title IX claim must be dismissed but she may proceed with her civil rights claims under 42 U.S.C. § 1983 and § 1985.

## FACTS

Plaintiff attended the Marion Center Area High School and by all accounts was a very good student, excelling academically

and participating in a wide variety of extra-curricular activities. Plaintiff was selected for membership in the high school's chapter of the National Honor Society (NHS).

In her junior year of high school plaintiff learned that she was pregnant. Plaintiff advised school officials that, although unmarried, she had decided to deliver the baby and raise it, and to complete her high school education and graduate with her class.

Following the birth of her baby in the fall semester of her senior year, plaintiff was advised that her continued membership in the NHS would be reviewed. After meeting with the 5 faculty advisors who comprise the NHS chapter's Faculty Council, plaintiff was advised that she would no longer be a member of the NHS. The local School Board later affirmed this action.

Plaintiff contends that she was dismissed from the NHS because she was an unwed mother and because she was discriminated against on the basis of sex. Defendants contend that plaintiff was dismissed because she admitted that she had voluntarily engaged in pre-marital sex and such conduct is inconsistent with the NHS' requirements of leadership and character.

Plaintiff has asserted claims under Title IX, 42 U.S.C. §§ 1983 and 1985, the equal protection clause of the 14th Amendment, and several pendent state claims. Defendants sought summary judgment on various grounds including the argument that the Title IX claim was no longer viable in light of the then recent decision in *Grove City v. Bell.* After a review of the motions, briefs and evidentiary materials we concluded that summary disposition of the Title IX claim was not appropriate, but that Title IX preempted the more general civil rights claims. See, *Middlesex County Sewage Authority v. National Sea–Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

Plaintiff sought reconsideration of our conclusion that Title IX preempted the civil rights claims. Our decision on that point has since found support elsewhere. *Mabry v. State Board for Community Colleges and Occupational Education,* 597 F.Supp.

1235 (D.Colo.1984), aff'd. on other grounds, 813 F.2d 311 (10th Cir.1987) Defendants sought reconsideration of all aspects of their motion for summary judgment.

## DISCUSSION

Title IX is program specific. The enforcement powers of Title IX extend only to those "programs" that receive, directly or indirectly, federal assistance. Generally, the grant of federal assistance to one program within a larger entity will not subject the entire entity to Title IX coverage. *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984).

What *Grove City* failed to do is to define "program". At the time of our previous Opinion and Order this uncertainty compelled denial of defendants' motion for summary judgment on this point. Subsequently a number of courts have addressed the issue and provided sufficient guidance.

The common thread in the reported decisions is that "program" is defined by Congressional intent as reflected in the scope of the grant. Thus if funds are earmarked for a specific use, the scope of that use provides a strong indication of the Title IX coverage. See, *United States v. State of Alabama,* 828 F.2d 1532 (11th Cir.1987) (program defined by grant, must be specific); *Foss v. City of Chicago,* 640 F.Supp. 1088 (N.D.Ill.1986), aff'd 817 F.2d 34 (7th Cir.1987) (Rehabilitation Act); *Mabry v. State Board of Community Colleges,* 597 F.Supp. 1235 (D.Colo.1984), aff'd 813 F.2d 311 (10th Cir.1987) (college received earmarked funds, but none for physical education program, so Title IX did not apply); *Bennett v. West Texas State University,* 799 F.2d 155 (5th Cir.1986) (Title IX did not apply to intercollegiate athletics program which received no earmarked funds); *O'Connor v. Peru State College,* 781 F.2d 632 (8th Cir.1986) (where college received federal research grant involving all departments, "program" for Title IX was academic program. This did not include college athletics and so Title IX did not apply to ex-coach's challenge to discharge); *Arline v. School Board of Nassau County,* 772 F.2d 759 (11th Cir.1985) (Rehabilitation

Act; school district's receipt of non-earmarked funds extended application of Act to all programs paid for from District's general fund); *Jacobson v. Delta Airlines Inc.*, 742 F.2d 1202 (9th Cir.1984) (Rehabilitation Act: "program" limited to federally subsidized operations and did not extend to airline's total operations); *United States v. Baylor University Medical Center*, 736 F.2d 1039 (5th Cir.1984) ("program" limited to hospital in-patient and emergency room services which receive Medicare/Medicaid); *Stephanidis v. Yale University*, 652 F.Supp. 110 (D.Conn.1986) (Rehabilitation Act; coverage limited to summer program, and not English Department generally); *Chaplin v. Consolidated Edison of New York, Inc.*, 628 F.Supp. 143 (S.D.N.Y.1986) (receipt of CETA and WIN funds does not trigger coverage of all hiring); *Henning v. Mayfield Village*, 610 F.Supp. 17 (N.D.Ohio 1985) (village's receipt of Federal Revenue Sharing Funds over which it has complete discretion makes entire village the "program" for purposes of the Rehabilitation Act).

Most important on this topic is *United States Department of Transportation v. Paralyzed Veterans of America*, 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986). The Court was called upon to define the scope of the "program" for enforcement under the Rehabilitation Act of 1973, 29 U.S.C. § 790 et seq., an enforcement scheme similar in design to Title VI and Title IX. Rejecting the argument that federal funding of airport development subjected the entire airline industry to the enforcement powers of the Act, the Court stated:

It is by reference to the grant statute, and not to hypothetical collective concepts like commercial aviation or interstate highway transportation, that the relevant program or activity is determined."

*Id.* at 611, 106 S.Ct. at 2714.

While we do not deal in the present case with concepts as broad as the commercial aviation industry, the holding of *Paralyzed Veterans* is still clearly applicable. In defining the "program" for purposes of Title IX enforcement we must examine the nature and scope of the federal grants received by defendant School District. By such means we must determine whether Congress intended Title IX coverage to extend to the entire school or some relevant component which would include the NHS chapter.

Thus we turn to the federal funding identified in the evidentiary material of record. Plaintiff claims that the high school received federal funding for school lunches and milk, for library materials, and for career guidance counselling. Plaintiff alleges that she participated in these various programs and benefitted from them. The School District also admits receiving federal funds for consumer homemaking and remedial instruction.

None of these identified programs has *any* relation, direct or indirect, to the NHS chapter other than the fact that they exist in the same school building. The mere availability of a library book or a reduced-price lunch cannot subject a wholly unrelated extracurricular activity to the scrutiny of Title IX. To do so would require us to ignore the program specific nature of Title IX, the nature and scope of the federal funding grants, and the intent of Congress reflected therein.

On this point it should be noted that plaintiff has not presented any evidentiary material to counter the School District's assertion in affidavit and deposition that it receives only earmarked funds and receives no federal funds over which it exercises complete discretionary control. As defendant's Superintendent testified at deposition, "All federal money is allocated categorically to specific programs." (Depo. of J. Mallino, p. 96). Thus, *Wort v. Vierling*, No. 82–3168, slip op. at 6 (C.D.Ill., Sept. 4, 1984) is distinguished.

Plaintiff makes much of the factual distinctions between a public school district and a private college such as Grove City. We recognize the existence of factually different settings, but we find nothing to indicate that the analysis and holdings in *Grove City* are inapplicable to public schools. See, e.g., *Arline v. School Board*

*of Nassau County,* 772 F.2d 759 (11th Cir. 1985); *United States v. State of Alabama,* 828 F.2d 1532 (11th Cir.1987) (state supported colleges). Although the nature, scope and amount of federal funding may be significantly different in a public school setting as opposed to a private college, Title IX remains program specific. The nature, scope and amount of federal funding in a public school setting may warrant a broader definition of program, but in the present case the evidentiary basis is lacking.

██ For the reasons stated we conclude that Title IX is inapplicable here. Plaintiff still maintains causes of action under 42 U.S.C. § 1983 and § 1985, as well as various state claims which are held in abeyance. In their motion for reconsideration defendants have reasserted their arguments in support of summary judgment on the civil rights claims. Defendants' arguments are ill-defined, perhaps in reflection of the amorphous theories set forth by plaintiff. In any event there is a rather obvious and critical factual dispute concerning the intentions and motivations of the Faculty Council in terminating plaintiff's membership in the NHS, as well as evidence of different treatment of unwed fathers, unwed mothers who marry and unwed mothers who don't marry. These factual issues must be addressed at trial and resolved by a factfinder, assuming the evidence at trial demonstrates a viable claim.

██ It is clear though that plaintiff has no viable claim for violation of procedural due process guarantees. Plaintiff had two meetings with the NHS Faculty Council, several meetings with school officials, and a public hearing before the School Board. Plaintiff had ample opportunity to present her side in these various forums and in fact she took full advantage of the opportunity. Plaintiff has not provided any evidentiary material to establish absence of procedural due process.

A few words of caution to plaintiff are in order. We are still not convinced of the viability of plaintiff's several theories of liability, in large measure because counsel has not consistently delineated them. Certainly if plaintiff proves as alleged that defendants treated her differently from a male member who engaged in premarital sex and fathered a child, a prima facie claim of sex discrimination is made out. On the other hand, we doubt that an equal protection claim is established by plaintiff's allegation that defendants did not discipline another female member who became pregnant because she married shortly before the birth of the child. This may however establish a substantive due process claim in some guise, but plaintiff's counsel has as yet been unable to articulate a legal basis for such a claim on such facts. We also have grave doubts about plaintiff's argument that a sex discrimination claim is made out solely by the fact that the NHS prohibition of pre-marital sex can only be enforced against women because biologically only women bear the evidence of their transgression. Perhaps a concise, carefully crafted trial brief, filed 7 days before the Pretrial conference, explaining the theories plaintiff advances on liability and the legal underpinnings for them will assist the court in defining the issues where counsel to date have only muddled them. It would also be wise for both counsel to adopt a dispassionate tone and avoid the emotional hyperbole which characterizes prior briefs in the case.

An appropriate Order will be entered.