[No. B002348. Second Dist., Div. Five. Dec. 11, 1984.]

DOUGLAS MARTIN, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Stanley Fleishman, Joseph Lawrence and Eve Triffo for Plaintiff and Appellant.

Ira Reiner, City Attorney, Gary R. Netzer, Senior Assistant City Attorney, Claudia McGee Henry, Assistant City Attorney and Anthony Saul Alperin, Deputy City Attorney, for Defendants and Respondents.

OPINION

**OSBORNE, J.**\*—In this case, we review federal and state statutes and regulations concerning access by handicapped persons to activities receiving

---

*Assigned by the Chairperson of the Judicial Council.

federal and state financial assistance. We consider their application to a public building constructed before the statutes were enacted.

Appellant, Douglas Martin, is a physically handicapped person who uses a battery-powered wheelchair for mobility. He was executive director of the Westside Community for Independent Living, an organization involved in providing services to people with disabilities and developing strategies that would improve the civil, social, and economic condition of people with disabilities. (See, e.g., *Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348 [188 Cal.Rptr. 873, 657 P.2d 365].) He alleges that the wheelchair access to the Rampart police station does not meet the requirements of federal and state law. General public access to the Rampart police station is by means of steps from the sidewalk to the front of the building. Wheelchair access is through a door from the upper level parking lot at the rear of the building. We will set forth the general context of legislation involving the handicapped, the specific laws involved in this case, and then turn to the issues raised by the contentions of the parties. Additional facts will be discussed as they relate to the issues on appeal.

## GENERAL CONTEXT

In recent years, the public has become much more sensitive to the problems of handicapped people. Ways have been sought to overcome problems inherent in the nature of the handicap, and to overcome the physical barriers to participation in the mainstream of society. The state and federal governments have adopted goals of eliminating discrimination against handicapped persons and facilitating their integration into the mainstream of social and economic life. These goals are reflected in legislation regarding such critical areas as employment, housing, education, transportation, and public access. In the area of public access, one goal is to reduce or eliminate the physical impediments to participation in community life, i.e., the "architectural barriers" against access by the handicapped to buildings and facilities used by the public at large. See *In re Marriage of Carney* (1979) 24 Cal.3d 725, 738-741 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028], for a summary of the scope of these legislative efforts.

This case involves one aspect of those efforts—handicapped access to a preexisting public building, the Rampart police station.

## SPECIFIC LAWS INVOLVED

The City of Los Angeles, and specifically the Los Angeles Police Department, conduct programs and activities receiving federal and state financial assistance.

The basic statutes prohibit discrimination, in any program receiving federal or state financial assistance, on the basis of physical handicap or disability.

Section 504 of the federal Rehabilitation Act of 1973 is codified as title 29 United States Code section 794. So far as relevant, that section provides: "No otherwise qualified handicapped individual . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." Various federal agencies have promulgated regulations to carry out the mandates of that section. Those of the Department of Justice appear in title 28 Code of Federal Regulations beginning at section 42.501. Those of the Department of Health and Human Services appear at title 45 Code of Federal Regulations beginning at section 84.1.

There are similar state provisions. Government Code section 11135 was enacted in 1977, and provides: "No person in the State of California shall, on the basis of ethnic group identification, religion, age, sex, color, or physical or mental disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state." The state regulations are set forth in title 22 California Administrative Code, beginning at section 98000.

The Department of Justice regulations were drafted to be consistent with the substance of Department of Health and Human Services (formerly HEW) regulations, but with some rewording to be as simple and clear as possible, as directed by executive orders. (45 Fed. Reg. 37620.) The state regulations are also similar in substance to the corresponding federal regulations.

For ease of reference, the United States Department of Justice and California Administrative Code regulations regarding access are set forth in the Appendix.

No reported cases have been called to our attention interpreting the regulations involved in this case.

### CONTENTIONS OF PARTIES

Appellant contends that: (1) The Rampart police station is required, and fails, to meet all current architectural standards to provide barrier-free wheelchair access to the building; (2) Even if current architectural standards

do not apply to a preexisting building, respondents have failed to provide required access to Rampart police station by any standard; and (3) Appellant has suffered actionable injury to his dignity by respondents' actions.

Respondents contend that: (1) Current architectural standards do not apply to preexisting buildings; (2) The law requires "program" access, not a barrier-free building; (3) Handicapped access to the city's law enforcement program is reasonable, effective, and satisfies all legal requirements; and (4) Appellant has not suffered any injury, and therefore has no standing to seek any relief.

After a trial by the court, judgment was entered for respondents. We affirm.

### ARCHITECTURAL STANDARDS APPLY
### ONLY TO NEW CONSTRUCTION

■ Appellant describes the relief requested as "simple enough: provide a barrier free reasonable entrance to the police station [such as] a ramp at the front door . . . ." Appellant contends that "barrier free physical design and program accessibility were not merely compatible concepts. They went hand in hand and neither could be realized without the other." He contends that, at the latest, the structural changes were required to be made within three years of the effective date of the regulations. (See 28 C.F.R. § 42.521(d); Cal. Admin. Code, tit. 22, § 98257.)

The regulations refer to the American National Standard Specifications for Making Buildings and Facilities Accessible to, and Usable by, the Physically Handicapped, published by the American National Standards Institute, Inc. (ANSI). (28 C.F.R. § 42.522(b); Cal. Admin. Code, tit. 22, § 98262.) However, the regulations expressly provide that those standards apply only to new construction commenced, or alterations made, after the effective date of the regulations. (28 C.F.R. § 42.522(a); Cal. Admin. Code, tit. 22, §§ 98260-98261.)

The federal regulations became effective in 1977 (45 C.F.R. 84.1 et seq.) and 1980 (28 C.F.R. § 42.501 et seq.). The state regulations became effective in 1980 (Cal. Admin. Code, tit. 22, § 98000 et seq.).

The construction of the Rampart police station was commenced in 1964, and there has been no structural alteration that would invoke the standards.

Appendix A of title 45 Code of Federal Regulations, part 84 is an extensive analysis of the lead HEW regulations. Subpart C analyzes program

.accessibility for both new construction and existing facilities. The discussion regarding existing facilities states: "[A] recipient is not required to make each of its existing facilities accessible to handicapped persons if its program as a whole is accessible. . . . Structural changes in existing facilities are required only where there is no other feasible way to make the recipient's program accessible.

". . . . . . . . . . . `. . . . . . . . . .

"We have received some comments from organizations of handicapped persons on the subject of requiring, over an extended period of time, a barrier-free environment—that is, requiring the removal of all architectural barriers in existing facilities. The Department has considered these comments but has decided to take no further action at this time concerning these suggestions, believing that such action should only be considered in light of experience in implementing the program accessibility standard."

Appellant relies on *Dopico* v. *Goldschmidt* (1982) 687 F.2d 644 as holding that title 29 United States Code, section 794 may require some affirmative action to remove access barriers. That case involved public transportation. The court stated, at page 652: "In the context of public transportation and the handicapped, denial of access cannot be lessened simply by eliminating discriminatory selection criteria; because the barriers to equal participation are physical rather than abstract, some sort of action must be taken to remove them, if only in the area of new construction or purchasing." The present case does not involve new construction. *Dopico* did not require that handicapped access be identical to general public access.

The trial court properly concluded that the federal and state laws, and their respective regulations, do not apply new architectural standards to require removal of all architectural barriers in existing facilities.[1]

### ACCESS REQUIREMENTS APPLY TO PROGRAMS, NOT BUILDINGS

Turning from architectural standards for new construction, to access requirements for existing facilities, appellant focuses on the physical facility,

---

[1]This conclusion is consistent with cases involving similar statutes. Appellant's original complaint claimed relief under federal law, and under California Civil Code section 54 and Government Code section 4450. The access requirements of those two California statutes apply only to new construction, and do not require structural alteration of existing buildings. (*Marsh* v. *Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881 [134 Cal.Rptr. 844].) (Appellant's first amended complaint eliminated reference to Civ. Code, § 54 and Gov. Code, § 4450, and substituted Gov. Code, § 11135 as a basis for his suit.)

the Rampart police station. Thus, he states that federal and state regulations plainly require the police department to "make its facility accessible to the handicapped." Further, he states that respondents "must take some kind of 'affirmative action' to make their facilities accessible to and usable by handicapped persons, so that the handicapped may participate in, and receive the benefits of the police department's many activities. The failure of the respondents to make their facilities accessible subjects handicapped persons to discrimination in violation of [29 U.S.C. 794]."

Appellant's focus is misdirected. ■ Facilities are merely means to an end—a program. Except of course for new construction, the requirements are focused on the program, and the facility (or building) is only one factor to be considered in determining whether the program is accessible.

The pertinent parts of the regulations are entitled "Program Accessibility." The regulations require that a program be operated so that the *program*, when viewed in its entirety, is readily accessible to and usable by handicapped persons. They do not require each existing facility to be accessible to handicapped persons. (28 C.F.R. § 42.521; Cal. Admin. Code, tit. 22, § 98254.)

The United States Attorney General has stated the rule simply and clearly: "For existing facilities, the key requirement is not a barrier free environment, but program accessibility . . . ." (45 Fed.Reg. 37621.)

The regulations include detailed provisions regarding program accessibility as it relates to existing facilities. It is that analysis to which we turn next.

### Program Access Meets Applicable Requirements

Each set of regulations has similar provisions regarding program access as it relates to existing facilities. (28 C.F.R. § 42.521; Cal. Admin. Code, tit. 22, §§ 98254-98255.)

A program, when viewed in its entirety, must be readily accessible to handicapped persons. That does not require each facility to be accessible to handicapped persons. The regulations suggest reassignment of services to accessible buildings, assignment of aids, home visits, delivery of services at alternate accessible sites,[2] and any other methods that result in program

---

[2]There is a barrier-free police station much nearer to appellant's residence than Rampart police station. Nonetheless, respondents contend, and the trial court found, that there was adequate wheelchair access to law enforcement programs provided through Rampart police station.

accessibility. Structural changes in existing facilities are required only where there is no other feasible way to make the recipient's program accessible. (45 C.F.R., part 84, appen. A—Analysis of Final Regulations, subpart C—Program Accessibility.)

We now turn to the facts of this case to determine if there is substantial evidence to support the trial court's finding.

The vast majority of citizen contacts for police services occur by telephone, or in person away from the police station. The department dispatches officers to meet citizens if a physical handicap or some other cause might interfere with the citizen's ability to get to the station.

However, substantial numbers of the general public do go in person to Rampart police station to participate in neighborhood watch meetings, report crimes, seek information, register guns, identify stolen property, and for similar activities. Though police sometimes go to a citizen's home or some other location for the convenience of a handicapped person, there is wheelchair access to the station itself.

A parking space is reserved for handicapped persons in the well-lighted upper parking lot. The rear of the station is much closer to the handicapped parking than the front is. There is a rear entrance to the station from the parking lot. The door is kept locked for security reasons. A buzzer clearly marked for use by handicapped persons rings inside and summons an officer to admit the citizen and conduct him to the public area of the station. There are signs at the front entrance to the building, at the foot of the driveway, and at the buzzer, giving directions to handicapped visitors.[3]

Handicapped persons who arrive by bus would gain access to the upper parking lot by going up the driveway. The driveway is 51 feet long, and has a slope of 8.1 percent, slightly less than the 8.33 percent maximum slope for wheelchair ramps permitted for new construction by ANSI standards.

Appellant argues that wheelchair access is still not adequate. The only accessible wheelchair entrance is the locked rear door, where someone has to ring a buzzer and wait to be admitted. Further, if the handicapped person arrives by public bus, he must go up the inclined driveway with the increased problems that implies. He contends that because an able-bodied citizen would not face those obstacles, the station is not accessible by any

---

[3]When appellant filed his original complaint, the buzzer and signs were planned, but not installed.

reasonable standard. However, as previously noted, the law does not require a barrier-free environment. The trial court found that the access met the requirements for preexisting facilities. There is ample evidence to support that finding.

Appellant cites *People* ex rel. *Deukmejian* v. *CHE, Inc.* (1983) 150 Cal.App.3d 123 [197 Cal.Rptr. 484] as requiring integrated access through a primary entrance and rejecting a nonequivalent secondary handicapped entrance to a restaurant. The case is not in point. It involved a different statute applicable only to new construction.

There was no evidence that appellant or any other handicapped person had ever sought and been denied access to Rampart police station, and no evidence that he or any handicapped person had been denied the benefits of, excluded from participation in, or otherwise subjected to discrimination under any program at Rampart police station.

The trial court found that appellant had not sustained his burden of proof of any violation by respondents. The record supports the findings and conclusions of the court. That is not to say that even better wheelchair access would not be desirable. However, at the present, further improvement is left to the discretion of respondents, for consideration along with other needs for funds. Our function ends with the determination that sufficient evidence supports the trial court's finding that respondents have not violated the applicable statutes and regulations.

## STANDING

Appellant lives and works in West Los Angeles, near an accessible barrier-free police station which he would probably contact if he needed police services. Appellant never sought and was never denied any services at Rampart police station. Respondents contended that appellant therefore was not entitled to relief and lacked standing to sue. The trial court found that appellant had suffered no actual injury and was therefore not entitled to the relief he seeks. Appellant contends that, as a member of the class of handicapped persons for whose special benefit the laws were passed, he has standing to assert violations of the law. Since we hold that appellant is not entitled to relief because there is no showing of any violation of law by respondents, we need not reach that issue.

## CONCLUSION

Since Rampart police station was constructed before standards were adopted for handicapped access to newly constructed buildings, those new

construction standards do not apply to it. The handicapped accessibility standards applicable to preexisting buildings require accessibility to programs, but do not require complete elimination of all existing architectural barriers. There is legal wheelchair access to the programs and activities at Rampart police station. Accordingly, the judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied January 9, 1985, and appellant's petition for a hearing by the Supreme Court was denied February 27, 1985. Bird, C. J., was of the opinion that the petition should be granted.

APPENDIX

28 CODE OF FEDERAL REGULATIONS
Program Accessibility.

§ 42.520 Discrimination prohibited.

Recipients shall insure that no qualified handicapped person is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination under any program receiving Federal financial assistance because the recipient's facilities are inaccessible to or unusable by handicapped persons.

§ 42.521 Existing facilities.

(a) *Program accessibility.* A recipient shall operate each program to which this subpart applies so that the program, when viewed in its entirety, is readily accessible to and usable by handicapped persons. This section does not require a recipient to make each of its existing facilities or every part of a facility accessible to and usable by handicapped persons.

(b) *Compliance procedures.* A recipient may comply with the requirement of paragraph (a) of this section through acquisition or redesign of equipment, reassignment of services to accessible buildings, assignment of aids [*sic*] to beneficiaries, delivery of services at alternate accessible sites, alteration of existing facilities, or any other method that results in making its program accessible to its program accessible [*sic*] to handicapped persons. A recipient is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with paragraph (a) of this section. In choosing among methods for meeting the requirement of paragraph (a) of this section, a recipient shall give priority to those methods that offer programs to handicapped persons in the most integrated setting appropriate to obtain the full benefits of the program.

(c) *Small providers.* If a recipient with fewer than fifteen employees finds, after consultation with a handicapped person seeking its services, that there is no method of complying with § 42.521(a) other than making a significant alteration in its existing facilities, the recipient may, as an alternative, refer the handicapped person to other available providers of those services that are accessible.

(d) *Time period.* A recipient shall comply with the requirement of paragraph (a) of this section within ninety days of the effective date of this subpart. However, where structural changes in facilities are necessary, such changes shall be made as expeditiously as possible and shall be completed no later than three years from the effective date of this subpart. If structural changes to facilities are necessary, a recipient shall, within six months of the effective date of this subpart, develop a written plan setting forth the steps that will be taken to complete the changes together with a schedule for making the changes. The plan shall be developed with the assistance of interested persons, including handicapped persons or organizations representing handicapped persons and shall be made available for public inspection. The plan shall, at a mininum [*sic*]:

(1) Identify physical obstacles in the recipient's facilities that limit the accessibility of its program to handicapped persons;

(2) Describe in detail the methods that will be used to make the facilities accessible;

(3) Specify the schedule for taking the steps necessary to achieve full program accessibility and, if the time period of the transition plan is longer than one year, identify the steps that will be taken during each year of the transition period; and

(4) Indicate the person responsible for implementation of the plan.

(e) *Notice.* The recipient shall adopt and implement procedures to insure that interested persons, including mentally retarded persons or persons with impaired vision or hearing, special learning problems, or other disabilities, can obtain information as to the existence and location of services, activities, and facilities that are accessible to and usable by handicapped persons.

§ 42.522 New construction.

(a) *Design and construction.* Each new facility constructed by, on behalf of, or for the use of a recipient shall be designed and constructed in such a manner that the facility is readily accessible to and usable by handicapped persons, if the construction was commenced after the effective date of this subpart. Any alterations to existing facilities shall, to the maximum extent feasible, be made in an accessible manner. Any alterations to existing facilities shall, to the maximum extent feasible, be made in an accessible manner. [Repetition in original.]

(b) *American National Standards Institute accessibility standards.* Design, construction, or alteration of facilities in conformance with the "American National Standard Specifications for Making Buildings and Facilities Accessible to, and Usable by, the Physically Handicapped" published by the American National Standards Institute, Inc. (ANSI A 117.1-1961 (R1971)), which is incorporated by reference in this subpart, shall constitute compliance with paragraph (a) of this section. Departures from particular requirements of those standards by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility is provided.

### 22 CALIFORNIA ADMINISTRATIVE CODE

§ 98254. Program Accessibility.

(a) Except as set forth in subsection (b) below, it is a discriminatory practice where a qualified disabled person, because a recipient's facilities are inaccessible to or unusable by such person, is denied the benefits of, or excluded from participation in, or otherwise subjected to discrimination under any program or activity to which this Division applies. It is a discriminatory practice for a recipient to fail to operate each program or activity to which this Division applies in such a manner that the program or activity, when viewed in its entirety, is readily accessible to disabled persons. This section does not require a recipient to make each of its existing facilities or every part of a facility accessible to and usable by disabled persons.

(b) It is a discriminatory practice for recipients operating fixed route bus systems or paratransit systems to fail to adhere to the program accessibility requirements set forth in Title 49, Part 27 of the Code of Federal Regulations.

§ 98255. Methods of Ensuring Program Accessibility.

A recipient may comply with the provisions of Section 98254 through such means as redesign of equipment, reassignment of classes or other services to accessible buildings, assignments [*sic*] of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities, or other methods that result in making its program or activities accessible to disabled persons. A recipient is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with Section 98254. In choosing among available methods for meeting the provisions of Section 98254, it is a discriminatory practice for a recipient to fail to give priority to those methods that offer programs and activities to disabled persons in the most integrated setting appropriate.

§ 98256. Methods For Small Recipients.

If a recipient with fewer than fifteen employees finds, after consultation with a disabled person seeking its services, that there is no method of complying with Section 98254 other than by making a significant alteration to its existing facilities, the recipient may, as an

alternative, be permitted by the responsible State agency to refer the disabled person to other providers whose services are accessible.

§ 98257. Time Period for Compliance.

It is discriminatory practice for a recipient to fail to comply with the requirement of Section 98254 within sixty days of the effective date of implementing regulations, except that where structural changes in facilities are necessary, such changes may be made within three years of such effective date, but in any event, as expeditiously as possible.

§ 98258. Transition Plan.

In the event that structural changes to facilities are necessary to meet the provisions of Section 98254, a recipient should be required by the responsible State agency to develop, within six months of the effective date of implementing regulations, a transition plan setting forth the steps necessary to complete such changes. The plan should be developed with the assistance of interested persons, including disabled persons or organizations representing disabled persons. A copy of the transition plan should be made available for public inspection. The plan should, at a minimum:

(a) identify physical obstacles in the recipient's facilities that limit the accessibility of its program or activity to disabled persons;

(b) describe in detail the methods that will be used to make the facilities accessible;

(c) specify the schedule for taking the steps necessary to achieve full program accessibility and, if the time period of the transition plan is longer than one year, identify steps that will be taken during each year of the transition period; and

(d) indicate the person responsible for implementation of the plan.

§ 98259. Notice of the Availability of Accessible Facilities.

Each recipient which is unable to comply with the provisions of Section 98254 within the sixty day period set forth in Section 98257 should be required by the responsible State agency to adopt and implement procedures to ensure that interested persons, including persons with impaired vision or hearing, can obtain information as to the existence and location of services, activities, and facilities that are accessible to and usable by disabled persons.

§ 98260. New Construction

(a) Except as set forth in subsection (b) below, it is a discriminatory practice where a facility or part of a facility constructed by, on behalf of, or for the use of a recipient is designed or constructed in such manner that the facility or part of the facility is not readily accessible to and usable by disabled persons if the construction was commenced after the effective date of implementing regulations.

(b) It is a discriminatory practice for recipients operating fixed route bus systems or paratransit systems to fail to adhere to the accessibility requirements for new vehicles set forth in Title 49, Part 27 of the Code of Federal Regulations.

§ 98261. Alteration.

(a) Except as set forth in subsection (b) below, it is a discriminatory practice where each facility or part of a facility which is altered by, on behalf of, or for the use of a recipient after the effective date of implementing regulations in a manner that affects or could affect the usability of the facility or part of the facility is not to the maximum extent feasible, altered in such manner that the altered portion of the facility is readily accessible to and usable by disabled persons.

(b) It is a discriminatory practice for recipients operating fixed route bus systems or paratransit systems to fail to adhere to the accessibility requirements for alterations of vehicles set forth in Title 49, Part 27 of the Code of Federal Regulations.

§ 98262. Accessibility Standards.

Design, construction, or alteration of facilities in conformity with the current "American National Standard Specifications for Making Buildings and Facilities Accessible to, and Usable by, the Physically Handicapped," published by the American National Standards Institute, Inc., or the regulations promulgated by the Office of the State Architect pursuant to Chapter 7 (commencing with Section 4450) Division 5 of Title I of the Government Code, constitutes compliance with Sections 98260 and 98261. Departures from particular requirements of these two standards by the use of other methods by a recipient are permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.