812 F.2d 1103
 GREATER LOS ANGELES COUNCIL ON DEAFNESS, INC.; Barbara U.
Sheridan and Joy Anne Maucere, individually and on
behalf of all others similarly situated,
Plaintiffs-Appellants,
v.
Frank S. ZOLIN, individually and as Jury Commissioner for
the County of Los Angeles; Raymond F. Arce, individually
and as Director of Juror Services for the County of Los
Angeles; County of Los Angeles; Superior Court of the
State of California for the County of Los Angeles,
Defendants-Appellees.
 No. 84-6448.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 3, 1985.
Submission Vacated Jan. 29, 1986.
Ordered Resubmitted April 25, 1986.
Decided March 11, 1987.
 
 Stanley Fleishman, Los Angeles, Cal., for plaintiffs-appellants.
 De Witt W. Clinton, Frederick R. Bennett, Deputy, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, PREGERSON and CANBY, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 The Greater Los Angeles Council on Deafness (GLAD) and deaf individuals Barbara Sheridan and Joy Ann Maucere appeal an adverse judgment in their suit against Los Angeles County, its superior court, its jury commissioner, Frank Zolin, and its director of juror services, Raymond Arce. Appellants sought monetary, injunctive and declaratory relief after county officials refused to provide, at public expense, sign-language interpreters ("interpreters") to enable deaf individuals to serve as jurors. This refusal, appellants argue, violates their fourteenth amendment rights to equal protection and due process, as well as statutory rights under section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794 (1982), and Cal.Gov't Code Sec. 11135 (West 1980).[1]
 
 BACKGROUND
 
 2
 The facts are not disputed. On January 1, 1981, a change in California law made hearing-impaired as well as other handicapped persons competent to serve as jurors. Cal.Civ.Proc.Code Secs. 198, 205 (West 1982).[2] In March 1981, appellants Sheridan and Maucere received summonses to appear for jury service in Los Angeles County Superior Court. Both women sent letters to the court explaining that their ability to serve depended on whether the court would provide them with interpreters at public expense.[3] Appellee Arce responded that there was no provision for payment of an interpreter and excused them from jury service.
 
 
 3
 In August and September 1981, GLAD paid more than $2000 for an interpreter to assist Nathan Shapiro, a deaf person who served as an alternate juror in a civil trial for 22 days. After unsuccessfully seeking reimbursement from the County for this expense, GLAD, joined by appellants Sheridan and Maucere, brought this action. After a bench trial, the district court entered judgment for defendants. See Greater Los Angeles Council on Deafness, Inc. v. Zolin, 607 F.Supp. 175 (C.D.Cal.1984) (hereinafter GLAD ). The court later confirmed its ruling by denying plaintiffs' motion under Fed.R.Civ.P. 59(e), and plaintiffs brought this timely appeal. We now affirm in part, reverse in part and remand.
 
 DISCUSSION
 I. THE CLAIM UNDER SECTION 504
 A. Section 504
 
 4
 Section 504 by its terms prohibits discrimination against handicapped persons in programs receiving federal financial support.[4] As the district court stated, section 504 was enacted as a general civil rights provision for the handicapped, designed " 'to prevent discrimination against all handicapped individuals ... in employment, housing, transportation, education, health services, or any other Federally-aided programs.' " GLAD, 607 F.Supp. at 180 (quoting S.Rep. No. 1297, 93rd Cong., 1st Sess. reprinted in 1974 U.S.Code Cong. & Admin.News 6373, 6388). We have recognized a private right of action under section 504, Kling v. County of Los Angeles, 633 F.2d 876, 878 (9th Cir.1980), and plaintiffs suing under section 504 may pursue the full panoply of remedies, including equitable relief and monetary damages, see Kling v. County of Los Angeles, 769 F.2d 532, 534 (9th Cir.) (damages), rev'd on other grounds, --- U.S. ----, 106 S.Ct. 300, 88 L.Ed.2d 277 (1985); Kling, 633 F.2d at 879 (injunction); see also Bachman v. American Society of Clinical Pathologists, 577 F.Supp. 1257, 1262 (D.N.J.1983).
 
 
 5
 As the district court further noted, to prove a section 504 violation, the plaintiffs must show (1) that hearing-impaired people are "handicapped persons" under the Rehabilitation Act, (2) that they are "otherwise qualified" to serve as jurors, (3) that the relevant program is federally funded, and (4) that the refusal to provide interpreters prevents deaf people from serving as jurors. See Bentivegna v. U.S. Dep't. of Labor, 694 F.2d 619, 621 (9th Cir.1982).
 
 
 6
 The district court, however, never reached the ultimate question whether section 504 requires the defendants to provide sign-language interpreters for jurors serving in the Superior Courts. Although appellants urge us to decide that issue on this appeal, it would be inappropriate for us to do so when the district court has not addressed this issue.[5] The issues that are properly before us are those upon which the district court ruled in denying relief to appellants. We turn to them now.
 
 B. Denial of Monetary Relief
 
 7
 The district court denied monetary relief because it found the defendants either shielded by immunity or uninvolved with the jury-selection process.
 
 1. Quasi-judicial Immunity
 
 8
 The district court held that the individual defendants were immune from a damage award because they were shielded by absolute "quasi-judicial immunity." See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 2812, 86 L.Ed.2d 411 (1985); Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 994-95, 47 L.Ed.2d 128 (1976). The district court relied heavily on our decision in Pomerantz v. County of Los Angeles, 674 F.2d 1288, 1291 (9th Cir.1982). In Pomerantz, a case superficially similar to this case, blind citizens challenged their exclusion from Los Angeles County juries. We affirmed the district court's determination that the court officials were shielded by quasi-judicial immunity. It so happens that among the court officials who were found immune in Pomerantz are the very ones who are individual defendants here. We nonetheless disagree with the district court's ruling that defendants Arce and Zolin are entitled to an absolute immunity in this case.[6]
 
 
 9
 When deciding whether a public official is immune from liability for acts performed in his official capacity, qualified immunity is the general rule and absolute immunity the exceptional case. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982); Butz v. Economou, 438 U.S. 478, 506-07, 98 S.Ct. 2894, 2910-11, 57 L.Ed.2d 895 (1978). The burden is on the official claiming the immunity to demonstrate that public policy requires recognition of an absolute immunity in his case. Harlow, 457 U.S. at 808, 102 S.Ct. at 2733; Butz, 438 U.S. at 506-07, 98 S.Ct. at 2910-11. It is well-settled that the immunity to which a public official is entitled depends not on the official's title or agency, but on the nature of the function that the person was performing when taking the actions that provoked the lawsuit. E.g., Mitchell, 105 S.Ct. at 2813; Imbler, 424 U.S. at 430, 96 S.Ct. at 994-95; Bothke v. Fluor Engineers & Constructors, Inc., 713 F.2d 1405, 1412 (9th Cir.1983), vacated on other grounds, 468 U.S. 1201, 104 S.Ct. 3566, 82 L.Ed.2d 867 (1984).
 
 
 10
 Quasi-judicial immunity, like judicial immunity, derives historically from the recognition that participation in the court system raises a significant risk of "entanglement in vexatious litigation." Mitchell, 105 S.Ct. at 2813. As the Supreme Court has recognized:
 
 
 11
 The judicial process is an arena of open conflict, and in virtually every case there is, if not always a winner, at least one loser. It is inevitable that many of those who lose will pin the blame on judges, prosecutors, or witnesses and will bring suit against them in an effort to relitigate the underlying conflict.
 
 
 12
 Id. Quite obviously, similar blame might also be pinned on other court officials variously responsible for assisting in an adjudication, such as the clerk of the court, or the persons responsible for selecting eligible potential jurors. Accordingly, we held in Pomerantz that the Los Angeles County Superior Court's jury administration personnel were entitled to quasi-judicial immunity for actions they performed in determining the eligibility of potential jurors to serve. See Pomerantz, 674 F.2d at 1290-91.
 
 
 13
 The district court here apparently believed that, as in Pomerantz, the individual defendants were engaged in the juror-selection process when the complained-of acts occurred. This was error.
 
 
 14
 In Pomerantz, the challenge was to defendants' exclusion of blind persons from juries as unqualified. By contrast, there exists no question here that the deaf plaintiffs are perfectly qualified to serve as jurors. The challenge is to defendants' determination that they need not provide these handicapped persons, defined by state statute to be generally eligible for jury service, with the reasonable accommodations necessary to permit them to participate in this important activity of citizenship.
 
 
 15
 Although the decisions challenged in this lawsuit were made in the course of defendants' official duties, they were not "an integral part of the judicial process," which has been seen as the lynchpin of both the judicial and quasi-judicial immunities. Imbler, 424 U.S. at 430, 96 S.Ct. at 994-95; see Mitchell, 105 S.Ct. at 2813; Richardson v. Koshiba, 693 F.2d 911, 914 (9th Cir.1982). The individual defendants' actions in issue here are simply not the sort of actions that "have been the primary wellsprings of absolute immunities," Mitchell, 105 S.Ct. at 2813, such as the quasi-judicial immunity. We conclude that defendants are not entitled to quasi-judicial immunity.
 
 2. Legislative Immunity
 
 16
 Nor was the decision to deny interpreters a legislative one, as the district court alternatively held. See GLAD, 607 F.Supp. at 179 n. 8. It is true that Zolin and Arce were establishing a policy on behalf of the Los Angeles County Superior Court. But this was not a case where the officials involved were empowered by a legislative body to promulgate regulations to implement the legislative will. The record does not indicate that any formal rulemaking occurred or that defendants used any particular procedure in arriving at their decision not to provide interpreters. The decisionmaking process here in no way resembled a legislative act in the traditional sense. Instead, faced with statutes declaring deaf persons generally qualified to serve as jurors, Zolin and Arce acted to execute those legislative mandates. Theirs was an executive decision. Legislative immunity does not shield it.
 
 
 17
 We reject defendants' argument that this case is controlled by Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). There, the Supreme Court held that state supreme court justices were immune from suits for acts performed in their legislative capacity. Id. at 731-34, 100 S.Ct. at 1974-76. The justices had been sued over rules they had promulgated governing discipline of members of the State Bar. The rules in Consumers Union, therefore, constituted far more than an internal interpretation of how to implement a statute. The Court held that, in promulgating the rules, members of the state supreme court were the state's legislators. Id. at 734, 100 S.Ct. at 1975-76. The same cannot be said for Zolin and Arce with respect to the policy at issue.
 
 3. Qualified Immunity
 
 18
 Aside from their misplaced reliance on Pomerantz and Consumers Union, defendants do not point to anything that even arguably requires us to recognize an absolute immunity for them in the factual context presented here. See Butz, 438 U.S. at 505-06, 98 S.Ct. at 2910-11. Accordingly, we conclude that the individual defendants here are entitled only to a qualified immunity, which protects them fully "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2738 (1982).
 
 
 19
 A qualified immunity does not help defendants in this case, however, because they waived their good faith defense.[7] We must, therefore, remand the plaintiffs' action for damages because the individual defendants are not, as the district court ruled, immune from liability for their actions here.
 
 4. Lack of Involvement in Jury Selection
 
 20
 The district court also ruled that Los Angeles County was not liable for damages here because it found that the County was uninvolved in the jury-selection process. GLAD, 607 F.Supp. at 179. The court again relied on Pomerantz, where we affirmed a similar district court finding. See Pomerantz, 674 F.2d at 1291.
 
 
 21
 As we have already made clear, however, it is irrelevant whether the County participated in the selection of jurors. The question here is whether the County participated in the decision to deny plaintiffs the assistance of interpreters. On this point, the district court's findings compel us to conclude that it did. The County paid the salaries and benefits of both individual defendants. More important, the district court found that Arce, Zolin and a Superior Court judge sought and relied upon advice from the County Counsel regarding their responsibilities toward deaf jurors. Several meetings concerning the Court's responsibility to deaf jurors were held; and various County officials participated. The evidence indicates, therefore, sufficient County participation in the challenged practices to render it liable for damages if a violation of section 504 is found to have occurred.
 
 5. Eleventh Amendment Immunity
 
 22
 Having determined that neither the individual defendants nor the County are immune from liability, we must still evaluate whether the eleventh amendment bars the lawsuit in any regard. The district court found the eleventh amendment inapplicable because the County, and not the State, was primarily responsible for funding, housing and operation of the Superior Court.[8] We cannot entirely agree.
 
 
 23
 In Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985), the Supreme Court held that the Rehabilitation Act, and specifically section 504, did not abrogate the eleventh amendment bar to suits in federal court against the states. To the extent that the state is a defending party in this suit, Atascadero makes it clear that plaintiffs can seek neither damages nor equitable relief under section 504. The question is whether the state is being sued here.
 
 
 24
 a) The County
 
 
 25
 The eleventh amendment does not bar actions against cities and counties. See Mt. Healthy City School Dist. Board of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). It therefore does not preclude the suit against the County.[9]
 
 
 26
 b) The Superior Court
 
 
 27
 More difficult are the questions whether the Superior Court or its employees may be sued. Although the County does pay most of the Superior Court's bills, state case law and constitutional provisions make clear that the Court is a State agency. See Cal. Const. art. 6 Secs. 1, 5 (West Supp.1986); Sacramento & San Joaquin Drainage Dist. v. Superior Court, 196 Cal. 414, 432, 238 P. 687, 694 (1925). The official name of the court is the Superior Court of the State of California; its geographical location within any particular county cannot change the fact that the court derives its power from the State and is ultimately regulated by the State. Judges are appointed by California's governor, and their salaries are established and paid by the State. We conclude that a suit against the Superior Court is a suit against the State, barred by the eleventh amendment. See Shaw v. California Dep't of Alcoholic Beverage Control, 788 F.2d 600, 603 (9th Cir.1986).[10]
 
 
 28
 c) The Individual Defendants
 
 
 29
 In a technical sense, employees of the Superior Court are state employees despite the fact that they are paid by the County and are included in County employee-benefit plans. See Greenaway v. Workmen's Comp. App. Bd., 269 Cal.App. 2d 49, 53-54, 57-59, 74 Cal.Rptr. 452, 455, 458-59 (1969). There is, then, a potential eleventh amendment problem with suing these individuals.
 
 
 30
 A functional approach governs the eleventh amendment's application to actions for money damages against state officials. Such actions are considered to be suits against the state, and thus barred, if " 'the state is the real, substantial party in interest.' " Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting Ford Motor Co. v. Indiana Dep't of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). We must look behind the pleadings to determine whether a decree in the case would operate in fact against the sovereign. If the judgment would actually run against the state treasury, the action is barred. Id. at 101-02, 104 S.Ct. at 908-09; Shaw, 788 F.2d at 604.
 
 
 31
 On the facts of this case, however, the district court found that the County, and not the State, would be responsible for any judgment that might be rendered. Our independent examination of the record shows this finding to be clearly correct. Because the state treasury is not in jeopardy, the action against the individual defendants for damages is not barred by the eleventh amendment.
 
 C. Denial of Equitable Relief
 1. Denial of the Injunction
 
 32
 The district court refused appellants' request for a mandatory injunction ordering the County to provide interpreters without cost. The district court found that there was neither current, nor the likelihood of future, federal funding of the county court system. The system was, therefore, not subject to the mandate of section 504. See GLAD, 607 F.Supp. at 180-81. We review the factual finding for clear error and the legal conclusion de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 33
 Our review of the record satisfies us that the finding was not clearly erroneous. Further, we agree with the district court that past federal funding provides no basis for an injunction under section 504.
 
 
 34
 We recognize that at least one district court has held otherwise. In Bachman v. American Society of Clinical Pathologists, 577 F.Supp. 1257, 1262 (D.N.J.1983), the court stated that handicapped persons who are discriminated against by federal grantees, "may seek affirmative injunctive and compensatory relief under section 504, even though the federal financial assistance has terminated." The Bachman court cites no authority for this proposition, however, and past federal funding is not a factual characteristic of any of the cases it relied upon. Instead, the cases discuss matters fully resolved in this circuit, such as the existence of a private right of action under section 504 and the variety of remedies available to section 504 plaintiffs.
 
 
 35
 We agree that the termination of federal funding should not bar a claim for damages. As the Bachman court recognized, the statute and implementing regulations are written in the present tense, see 29 U.S.C. Sec. 794; 45 C.F.R. Sec. 84.1 (1985), reflecting the fact that federal funding is conditioned on the recipient's simultaneous compliance with the anti-discrimination provisions of section 504. Bachman, 577 F.Supp. at 1260. "Failure to comply with this condition ... constitutes a statutory violation which is not cured merely upon the discontinuance of the federal assistance." Id. at 1261. If a person suffers discrimination in violation of section 504, he may collect appropriate damages even if federal funding of the program has ended.
 
 
 36
 We cannot agree, however, that an injunction ordering an end to discriminatory behavior may properly issue under section 504 where, as here, federal funding has ended and there is no indication that it will be renewed. The mandate of section 504 is simply inapplicable to future conduct unless there is a showing that the program or activity in issue is receiving, or in the future will likely receive, federal funding. The statute does not prohibit discrimination against the handicapped as such; it simply bars the use of federal funds to support programs or activities that so discriminate.[11] See U.S. Dep't of Transportation v. Paralyzed Veterans of America, --- U.S. ----, 106 S.Ct. 2705, 2711, 91 L.Ed.2d 494 (1986). The district court properly denied the injunction.
 
 2. Denial of Declaratory Relief
 
 37
 The district court also refused to grant declaratory relief.[12] The court ruled that a declaration would not be useful because certain issues related to section 504 litigation were factually too case-specific to permit a general ruling on them. Accordingly, the court did not believe that a declaration would eliminate uncertainty about legal obligations under section 504 or prevent future litigation.
 
 
 38
 Whether or not to grant a declaratory judgment is a matter committed to the sound discretion of the district court. Doe v. Gallinot, 657 F.2d 1017, 1024 (9th Cir.1981). But, with declaratory-judgment rulings, unlike many other discretionary acts, we must exercise our own discretion to determine the propriety of the district court's ruling. United States v. State of Washington, 759 F.2d 1353, 1356-57 (9th Cir.1985) (en banc) (per curiam). As a result, we effectively review a district court's decision to grant or deny declaratory relief de novo. Guerra v. Sutton, 783 F.2d 1371, 1376 (9th Cir.1986); Washington, 759 F.2d at 1362 (Nelson, J., dissenting in part).
 
 
 39
 Declaratory relief should be denied when it will neither aid in clarifying and settling legal relations in issue nor terminate the proceedings and afford the parties relief from the uncertainty and controversy they faced. E.g., Washington, 759 F.2d at 1357; McGraw-Edison Co. v. Performed Line Products Co., 362 F.2d 339, 342 (9th Cir.), cert. denied, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966). The decision to grant declaratory relief "should always be made with reference to the public interest," Washington, 759 F.2d at 1357, recognizing that declarations can serve an important educational function for the public at large as well as for the parties to the lawsuit, Bilbrey v. Brown, 738 F.2d 1462, 1471 (9th Cir.1984). Thus, the existence of other remedies does not preclude appropriate declaratory relief. Fed.R.Civ.P. 57. With these principles in mind, we turn to the propriety of denying declaratory relief in this case.
 
 
 40
 In order to state a cause of action under section 504, a plaintiff must allege discrimination by or exclusion from a "program or activity" receiving federal financial assistance. 29 U.S.C. Sec. 794.[13] Plaintiffs must identify specifically the program or activity at issue when legal obligations, like those imposed by section 504, turn on the existence of federal funding. See Consolidated Rail Corp. v. Darrone, 465 U.S. 624, 636, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984); see also U.S. Dep't of Transportation v. Paralyzed Veterans of America, --- U.S. ----, 106 S.Ct. 2705, 2714, 91 L.Ed.2d 494 (1986) (relevant program or activity determined by reference to particular grant statute, not by reference to "hypothetical collective concepts").
 
 
 41
 The district court here concluded that the issue of which specific program was involved was sufficiently case-specific that a declaration would do little or nothing to eliminate uncertainty or prevent future litigation. The court relied on United States v. University Hospital, 729 F.2d 144, 151 (2d Cir.1984), where the Second Circuit stated that "the issue of program-specificity cannot be properly analyzed in the abstract, but instead requires a concrete set of facts." We agree that it is difficult to generalize in determining whether a sufficient nexus exists between a program receiving federal assistance and a plaintiff to support a section 504 action. Cf. Tudyman v. United Airlines, 608 F.Supp. 739, 742 (C.D.Cal.1984) (declining to decide program definition on summary judgment).
 
 
 42
 The recognition that program definition is often a highly case-specific matter does not resolve the question whether declaratory relief was properly denied here, however. This case appears to us quite similar to Bilbrey v. Brown, 738 F.2d 1462 (9th Cir.1984). There, the parents of two fifth-grade students sued to recover for allegedly unlawful searches of the students by school officials. Plaintiffs sought both damages and a declaration that the searches violated the students' fourth amendment rights. A jury had found that the officials had acted in good faith, and it accordingly denied monetary relief on qualified-immunity grounds. The district court denied the declaration, apparently believing that it would serve no purpose.
 
 
 43
 We reversed. We held that the district court had examined the usefulness of the declaration only from the defendants' point of view. The court had ignored the fact that plaintiffs had been wronged and deserved to have their position vindicated even if damages were unavailable to compensate them. Further, we held that the district court had disregarded the public-education function that a declaration can serve. Because the searches were clearly unlawful, we ordered the district court to enter an appropriate declaration in plaintiffs' favor. Id. at 1470-71.
 
 
 44
 We conclude that we should remand this case for the district court to re-evaluate, in light of the applicability of Bilbrey, its decision denying declaratory relief.[14] Such relief might be appropriate as a vindication of plaintiffs' position and as a public statement of the extent of handicapped persons' rights under section 504. It may even forestall future litigation. See generally McGraw-Edison, 362 F.2d at 342-43. Whether declaratory relief is ultimately justified must, however, await determination of issues not yet resolved by the district court, including those of program specificity and the specific requirements of section 504 when federal funding is present. After exploration of those issues and any others that it finds to be appropriate, the district court may again exercise its discretion, in light of Bilbrey and our decision here, whether to award declaratory relief.
 
 II. THE CALIFORNIA STATUTE
 
 45
 A. Private Right of Action Under Section 11135
 
 
 46
 Appellants object to dismissal of their pendent claim under Cal.Gov't Code Sec. 11135 (West 1980).[15] The district court held that no private right of action existed under the state statute because of the existence of what it determined was a mandatory, exclusive administrative remedy. See GLAD, 607 F.Supp. at 182-83. We review questions of state law de novo. Matter of McLinn, 739 F.2d 1395, 1398 (9th Cir.1984) (en banc).
 
 
 47
 The question of a private right of action under section 11135 has never been addressed by the California courts. Indeed, the statute has been mentioned in California cases only a few times. Nonetheless, we conclude, for reasons that follow, that California courts would likely construe the statute as supporting a private right of action. See Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087-88, 45 L.Ed.2d 26 (1975).
 
 
 48
 While the section 11135 cases do not address whether a private right of action exists under the statute, the cases all involved private litigants, who, like plaintiffs here, were either handicapped persons or organizations of handicapped people.[16] Moreover, the similarity of language between section 11135 and section 504 clearly supports finding a private right of action under section 11135. See Kling v. County of Los Angeles, 633 F.2d 876, 878 (9th Cir.1980) (private right of action under section 504).
 
 
 49
 Also important to our decision is California's stated policy to achieve, insofar as possible, the "total integration of handicapped persons into the mainstream of society." In re Marriage of Carney, 24 Cal.3d 725, 740, 598 P.2d 36, 44, 157 Cal.Rptr. 383, 391 (1979) (citing section 11135 as one example of the state legislature's effort in this regard). Cal. Gov't Code Sec. 11139 (West 1980), for example, mandates construing section 11135 and related civil rights provisions so as not to frustrate their purpose. Further, among the numerous handicapped rights statutes scattered throughout the California Codes is an unequivocal statement that it is California's policy "to encourage and enable disabled persons to participate fully in the social and economic life of the state...." Cal.Gov't Code Sec. 19230(a) (West 1980). Refusing handicapped people an opportunity to vindicate their rights through private lawsuits would, in our view, be inconsistent with these statements of policy from California's legislature and courts.
 
 
 50
 We reach our conclusion despite the existence of an administrative remedy not present in the federal statutory scheme. See Cal.Gov't Code Sec. 11136 (West 1980).[17] Section 11136, however, is not written in mandatory or exclusive terms. We do not read it as precluding a private judicial remedy. Cf. 31 U.S.C. Sec. 6721(a) (1982) (Revenue Sharing Act remedy expressly barring private lawsuits until prescribed administrative remedy exhausted). Nor does the fact that the California legislature expressly provided for private rights of action in certain articles of its Government Code necessarily indicate a legislative intent to preclude private actions to vindicate rights granted by other parts of the Code. Our conclusion is supported by section 11139, mandating liberal construction of the Code's civil rights provisions.
 
 
 51
 The added enforcement possibilities created by permitting private lawsuits would, in our view, best effectuate a civil rights provision like section 11135. The reasons for recognizing a private right of action under section 504 seem applicable here. See Kling, 633 F.2d at 878. Accordingly, we conclude that a private right of action exists under Cal.Gov't Code Sec. 11135.
 
 B. The Eleventh Amendment
 
 52
 Defendants argue that even if there is a private right of action under section 11135, federal courts cannot grant relief because of the eleventh amendment. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 124-25, 104 S.Ct. 900, 920-21, 79 L.Ed.2d 67 (1984) (federal courts lack jurisdiction to enjoin state institutions and state officials on the basis of state law).
 
 
 53
 Under our ruling above, supra Part I(B)(5), defendants are clearly correct that the eleventh amendment bars the suit against the Superior Court. Equally clear is that the suit against the County is not barred. Again, the troublesome question is the suit against the individual defendants. We recognize that defendants are technically state employees. Nonetheless, because of the finding that relief against them will in fact constitute relief against the County, we conclude that the action based on section 11135 may proceed without violating the Pennhurst rule.
 
 III. GLAD'S STANDING TO SUE
 
 54
 Appellees argue, apparently for the first time, that GLAD lacks standing to bring an action under section 504.[18] Its argument, based on Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087-88, 45 L.Ed.2d 26 (1975); accord Kling, 633 F.2d at 878, is that GLAD may not bring a private action under section 504 because it is not a member of the class benefited by the statute.
 
 
 55
 Appellees assert that this case is analogous to Sanders v. Marquette Public Schools, 561 F.Supp. 1361, 1368-70 (W.D.Mich.1983), where the court held that a father of a handicapped child could not sue under section 504 for his personal pain and suffering and for alternative school expenses incurred when a school district allegedly denied his daughter's right to education. The father, the court held, was not in the class that Congress intended to benefit by enacting section 504.
 
 
 56
 We cannot accept the Sanders ruling to the extent that it precluded the father from recovering expenses he incurred to secure for his daughter an education that the school district was legally obligated to provide. The expenses were incurred for the daughter's benefit, and the father's relationship made the expenditures foreseeable and appropriate, and rendered him a suitable person to assert and enforce rights of his daughter. See Singleton v. Wulff, 428 U.S. 106, 114-115, 96 S.Ct. 2868, 2874-75, 49 L.Ed.2d 826 (1976) (plurality opinion).
 
 
 57
 This court has already held that organizations of or for handicapped persons have standing to sue for injunctive relief under section 504. Williams v. United States, 704 F.2d 1162, 1163 (9th Cir.1983). GLAD is therefore clearly entitled to invoke section 504 for some purposes. So long as its claim is for expenses reasonably and foreseeably expended to secure for a handicapped juror an interpreter that the defendants were legally obligated to provide, we see no reason why GLAD, organized for the benefit of hearing-impaired persons, cannot maintain a damages action under section 504. Whether GLAD may actually recover its expenses must await further litigation of the merits in district court; our holding is that GLAD has standing to litigate that claim.
 
 IV. CONSTITUTIONAL CLAIMS
 
 58
 In their complaint, appellants alleged that refusal to provide them with an interpreter violated fourteenth amendment due process and equal protection. The district court found that these claims were waived because they were not mentioned during trial and because appellants' post-trial brief stated, "Because plaintiffs recognize that this case is better resolved without reaching a constitutional question, they do not here press their constitutional claim." Appellants refer to several points in the record where they contend they did raise the constitutional claims during trial. They also argue that they did not waive the claims in their post-trial brief, but merely followed Campbell v. Kruse, 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977) (vacating judgment based on constitutional claim and remanding for decision under section 504).[19]
 
 
 59
 We agree with the district court's conclusion that plaintiffs waived their constitutional claims. Although the presumption is against waivers of constitutional rights, e.g., Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246-47, 16 L.Ed.2d 314 (1966), a party may waive constitutional claims by failing to press them adequately before a court. Our review of the record indicates that, although plaintiffs included constitutional claims in the complaint, the case was in fact tried solely on the statutory claims. The constitutional claims were hardly mentioned outside of plaintiffs' counsel's opening remarks. Plaintiffs' statement in their post-trial brief only serves to reinforce what the trial record already makes clear--that plaintiffs relied only on their statutory claims. Our preference for avoiding constitutional questions where possible, e.g., Jean v. Nelson, 472 U.S. 846, 105 S.Ct. 2992, 2997-98, 86 L.Ed.2d 664 (1985); Campbell, 434 U.S. 808, 98 S.Ct. 38, does not relieve litigants of the responsibility to present evidence and arguments on every claim they wish to pursue. The district court properly concluded that the constitutional claims had been abandoned. Cf. Robert's Waikiki U-Drive, Inc. v. Budget Rent-a-Car Systems, Inc., 732 F.2d 1403, 1408-09 (9th Cir.1984).
 
 CONCLUSION
 
 60
 To summarize, we hold that past federal funding of the relevant program can support an action for damages and declaratory relief under section 504. An injunction, however, may not be based on past funding.
 
 
 61
 We conclude that the district court erred in ruling that the individual defendants here were shielded from liability by quasi-judicial or legislative immunity. Moreover, the eleventh amendment does not bar the lawsuit in toto because the County, and not the State, will be responsible for any monetary judgment that may result. Because the Superior Court is a state entity, however, it must be dismissed on eleventh amendment grounds.
 
 
 62
 We further conclude that the district court improperly held that there was no private right of action under Cal.Gov't Code Sec. 11135. We agree, however, that plaintiffs had abandoned their constitutional claims.
 
 
 63
 In light of the foregoing, we affirm the district court's dismissal of the claim for injunctive relief under section 504 and of the constitutional claims against all defendants. We also affirm the dismissal of the entire action against the Superior Court. In all other respects, we reverse the judgment and remand for further proceedings consistent with this opinion. Appellants are entitled to costs.
 
 
 64
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 In their complaint, appellants also alleged violation of 31 U.S.C. Sec. 6716(b)(2), which prohibits discrimination on the basis of handicap by state and local government agencies that receive revenue sharing funds. The district court denied relief under the Revenue Sharing Act because of appellants' failure to exhaust the prescribed administrative remedy before suing. Appellants do not challenge this ruling on appeal
 
 
 [2]
 Under related provisions, a party may challenge a hearing-impaired venireman for cause, but interpreters must be admitted into the jury room once a deaf person is seated. Cal.Civ.Proc.Code Secs. 602(2), 610 (West Supp.1986)
 
 
 [3]
 All parties concede that the individual appellants are fully competent to serve as jurors and that they declined to serve only because of the expense of providing their own interpreter
 
 
 [4]
 Section 504, 29 U.S.C. Sec. 794 (1982), provides, in pertinent part:
 No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 
 
 [5]
 We similarly do not reach subissues of fact that the district court did not rule upon. An example is the question whether the lack of interpreters effectively barred deaf persons from serving as jurors, or whether other measures such a lip-reading or use of hearing aids could serve in place of interpreters
 
 
 [6]
 The type of immunity to which a public official is entitled is a question of law, reviewed here de novo. See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)
 
 
 [7]
 Before stipulating to the waiver, the record shows that Arce testified that he was aware of section 504's requirement of reasonable accommodation to handicapped persons to persons otherwise qualified to serve as jurors. The same defendants, it appears, had previously agreed to settle a case brought by some potential jurors with physical disabilities who were barred from participation as jurors because of building-access problems. The defendants were therefore aware of section 504's general requirements when they decided not to provide interpreters
 
 
 [8]
 For example, the district court found that $47 million of the Superior Court's $52 million budget in 1982 came from the County. GLAD, 607 F.Supp. at 178
 
 
 [9]
 To the extent appellees argue that Los Angeles County may not be sued under the eleventh amendment due to its status as a state political subdivision, the argument must fail. In Moor v. County of Alameda, 411 U.S. 693, 718-20, 93 S.Ct. 1785, 1800-01, 36 L.Ed.2d 596 (1973), the Supreme Court specifically addressed and rejected this contention by another California county
 
 
 [10]
 Since the eleventh amendment by its terms bars suits against a state "in law or equity," our holding necessarily applies also to plaintiffs' claims against the Superior Court for injunctive and declaratory relief
 
 
 [11]
 In this regard, section 504 is similar to other statutes placing conditions on the receipt of federal funding. One example is Title IX of the Education Amendments of 1972, 20 U.S.C. Sec. 1681(a) (1982), which bars sex discrimination by any educational program or activity receiving federal funding. As the Supreme Court noted in Grove City College v. Bell, 465 U.S. 555, 575, 104 S.Ct. 1211, 1222, 79 L.Ed.2d 516 (1984), Congress may attach reasonable conditions to federal financial assistance. The recipients of federal funding are not thereby obligated to accept the conditions, however, because they "may terminate [their] participation in the ... program and thus avoid" the conditions imposed by the statute. Id
 Section 504 is accordingly unlike provisions in the Civil Rights Act of 1964, in which Congress, in an exercise of its regulatory power, prohibited discrimination directly. E.g., 42 U.S.C. Sec. 2000a (1982); see Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 245-49, 85 S.Ct. 348, 351-53, 13 L.Ed.2d 258 (1964).
 
 
 [12]
 The court's decision concerning declaratory relief came in its denial of plaintiffs' post-trial motion under Rule 59(e). It was not published
 
 
 [13]
 The Supreme Court has recently commented on the financial assistance requirement. For purposes of section 504, we may not draw a distinction between direct or indirect federal aid. Moreover, "federal financial assistance" may be either monetary or nonmonetary. See U.S. Dep't of Transportation v. Paralyzed Veterans of America, --- U.S. ----, 106 S.Ct. 2705, 2711-12 & n. 11, 91 L.Ed.2d 494
 
 
 [14]
 Our reliance on Bilbrey should make clear that we also reject the district court's conclusion that the request for a declaration was moot due to an absence of current federal funding. In Bilbrey, we found that a bona fide controversy existed notwithstanding the fact that the students searched had both gone on to high school and that one of the defendant school officials had left his post. The declaration would still "serve to delineate important rights and responsibilities." Bilbrey, 738 F.2d at 1471
 
 
 [15]
 Section 11135 provides:
 No person in the State of California shall, on the basis of ethnic group identification, religion, age, sex, color, or physical or mental disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state.
 
 
 [16]
 We are aware of only three cases actually construing section 11135. Westside Community for Independent Living v. Obledo, 33 Cal.3d 348, 657 P.2d 365, 188 Cal.Rptr. 873 (1983), appears unhelpful as it involved an attempt by handicapped rights groups to compel promulgation of regulations to enforce Section 11135. Martin v. City of Los Angeles, 162 Cal.App.3d 559, 209 Cal.Rptr. 301 (1984), involved a suit by a handicapped person to compel architectural modifications to a police station. Although relief was denied, judgment was on the merits. Finally, People v. Levinson, 155 Cal.App.3d Supp. 13, 203 Cal.Rptr. 426 (Super.1984), involved an unsuccessful challenge to a fine imposed on a deaf traffic offender. He argued under 11135 that an interpreter should have been provided so that he could attend traffic school in lieu of his fine. Once again, the court reached the merits of the controversy
 
 
 [17]
 Section 11136 provides, in pertinent part:
 Whenever a state agency that administers a program or activity that is funded directly by the state or receives any financial assistance from the state, has reasonable cause to believe that a contractor, grantee, or local agency has violated the provisions of Section 11135, or any regulation adopted to implement such section, the head of the state agency shall notify the contractor, grantee, or local agency of such violation and shall, after considering all relevant evidence, determine whether there is probable cause to believe that a violation of the provisions of Section 11135, or any regulation adopted to implement such section has occurred. In the event that it is determined that there is probable cause to believe that the provisions of Section 11135, or any regulation adopted to implement such section, have been violated, the head of the state agency shall cause to be instituted a hearing ... to determine whether a violation has occurred.
 
 
 [18]
 Appellees' claim is more a question of GLAD's entitlement to relief under section 504 more than a question of Article III standing to sue. For jurisdictional purposes, the record establishes that GLAD has a sufficient stake in the outcome of this controversy to maintain this action. See Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2204-05, 45 L.Ed.2d 343 (1975); see also Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471-72, 102 S.Ct. 752, 757-59, 70 L.Ed.2d 700 (1982)
 
 
 [19]
 Appellees argue that the federal courts should abstain from deciding the issue because the California statutes declaring handicapped people competent to serve as jurors have not been authoritatively construed. We reject the contention. First, abstention is a matter left to the trial court's sound discretion. Silberkleit v. Kantrowitz, 713 F.2d 433, 435 (9th Cir.1983). Second, appellees seem to argue that this is an appropriate case for abstention under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The problem with this argument is that there is no pending state proceeding in this case. Most important, there is no indication that appellees ever raised the abstention argument below. As this is the first time the issue has been raised, it is not properly considered on appeal. Trans Container Services (Basel) A.G. v. Security Forwarders, Inc., 752 F.2d 483, 487 (9th Cir.1985)